**QUINCY MUTUAL FIRE INSURANCE COMPANY, Appellant,**

v.

**J. W. JONES and B. R. Pritchett, Appellees.**

**No. 17928.**

Court of Civil Appeals of Texas, Dallas.

June 29, 1972.

Rehearing Denied Oct. 12, 1972.

Franklin H. Perry, Thompson, Coe, Cousins, Irons & Porter, Dallas, for appellant.

D. Ronald Reneker, Geary, Brice, Barron & Stahl, Dallas, for appellees.

CLAUDE WILLIAMS, Chief Justice.

This action originated when Paul C. Jordan, trustee under a deed of trust, sold cer-

tain real estate situated in Dallas County and had a surplus of funds from such sale which he paid into the registry of the district court in a bill of interpleader. He alleged that J. W. Jones and B. R. Pritchett, jointly, and Quincy Mutual Fire Insurance Company, were making conflicting claims to the surplus funds amounting to $2,575.99. Jones and Pritchett filed their answer asserting their right to receive the funds because they had purchased the property in question and assumed a mortgage debt which had been discharged by the trustee from the proceeds of the sale. The insurance company filed its answer in which it based its claim to the money on the language of the standard mortgage and subrogation clauses of a fire insurance policy issued by it to one of Jones' and Pritchett's predecessors in title. Both Jones and Pritchett and Quincy Mutual filed their motions for summary judgment. The trial court sustained the motion filed by Jones and Pritchett and rendered judgment awarding them the funds on deposit. The insurance company appeals.

In its primary point appellant alleges error on the part of the trial court in rendering summary judgment for appellees because appellant was subrogated to all rights of a mortgagee and trustee and should have therefore received the surplus proceeds after the mortgagee had been fully indemnified by the trustee's sale.

The facts are stipulated. On August 25, 1964 appellant insurance company issued its Texas standard fire insurance policy to Walter W. Boyd as "insured" with the provision that the loss on the building items should be payable to "Farm & Home Savings Association", as mortgagee or trustee, as its interest might appear. Farm & Home Savings Association's indebtedness was evidenced by a note in the principal sum of $10,600 payable at the rate of $58.93 per month.

The fire insurance policy issued to Boyd, the then owner of the property, extended from August 25, 1964 to August 25, 1969.

Boyd thereafter sold the property to James W. White and by endorsement attached to the policy White was shown as the "named insured as owner of the property". Thereafter White, by warranty deed, conveyed the property to Lonnie H. Taylor and wife. The fire insurance policy contained a standard provision to the effect that the insurance company would not be liable for loss occurring following a change of ownership of the insured property unless such change of ownership was shown by endorsement placed upon the policy. At no time was an endorsement included in the policy to show the ownership of the property had changed from White to Taylor and wife.

On November 29, 1966 the property was damaged by fire. By reason of the change of ownership of the property the appellant insurance company denied liability to White and also to Taylor and wife. Neither White nor the Taylors filed a proof of loss or instituted suit against the insurance company to recover the proceeds of the loss.

On September 7, 1967 Farm & Home executed a proof of loss, pursuant to which it was stated that the whole loss and damage by reason of the fire on November 29, 1966 was $3,494.76. That amount was paid by appellant insurance company to Farm & Home.

The insurance policy contained the following standard provision:

"This policy, as to the interest of the mortgagee only therein, shall not be invalidated by any act or neglect of the mortgagor or owner of the within described property, * * * nor by any change in the title or ownership of the property * * *."

The policy also contained a mortgage clause in accordance with Article 6.15 of the Texas Insurance Code, V.A.T.S. The pertinent portion of said clause provides:

"If this Company shall claim that no liability existed as to the mortgagor or

owner, it shall, to the extent of payment of loss to the mortgagee, be subrogated to all the mortgagee's rights of recovery, but without impairing mortgagee's right to sue; or it may pay off the mortgage debt and require the assignment thereof and of the mortgage."

Default having been made in the payments of the note held by Farm & Home it declared the whole debt due, appointed Paul C. Jordan as trustee and said trustee posted such real property for foreclosure sale on Tuesday, October 3, 1967. On or about October 3, 1967 the appellees J. W. Jones and B. R. Pritchett, being real estate brokers, acquired title to the real property in question. In the warranty deed Jones assumed the unpaid balance of the note due Farm & Home. At the foreclosure sale held on Tuesday, October 3, 1967, Jordan, as trustee, sold the real property to James M. Cline and John D. McGowen for the sum of $6,300, being the highest and best bid for the property.

At the time of the sale the balance claimed by Farm & Home Savings Association was the sum of $3,442.66 computed by allowing credit of mortgage payments, payment of fire loss, interest, etc.

Farm & Home returned to the trustee the amount of $2,857.34 overage and out of such sum the trustee expended certain amounts for cost and attorney's fees which left a balance of $2,575.99 which the trustee tendered into court.

Appellees contend that the appellant insurance company's subrogation rights were secondary and inferior to the lien on the premises in question held by Farm & Home and that by virtue of the foreclosure of said lien by the mortgagee any subrogation rights of the insurance company were terminated insofar as the security is concerned.

Appellees do not deny the contention of appellant that because of change of ownership the fire insurance policy became void as to the mortgagor. Being of no force and effect as between the mortgagor and the insurance company, the fire insurance contract then became one solely between the insurance company and the mortgagee.

Appellees argue, however, that when the insurance company paid the mortgagee the amount of the loss, which was less than the total indebtedness due mortgagee, that the insurance company acquired subrogation rights which were given in the alternative. It points to the subrogation clause which provides that (1) the insurance company may, by paying the amount less than the outstanding mortgage debt to the mortgagee for fire damage, be subrogated to the mortgagee's "right of recovery", or (2) by paying off all of the outstanding mortgage debt, it may take an assignment of the mortgagee of the mortgage debt and the lien securing it. Appellees say that when appellant followed the first option and by not electing to pay off the mortgage debt and take an assignment of the mortgage it became subrogated only to the mortgagee's right to bring a personal action against the mortgagor at the time of the damage for the amount that it was forced to pay the mortgagee by virtue of the mortgage clause in the insurance policy but such election does not give rise to cause of action for foreclosure of the mortgage lien. To accept appellees' argument as valid would have the effect of defeating the appellant insurer's right of subrogation and would also result in the mortgagor, and his successor in interest, being rewarded by receiving the beneficial results of payments made on a contract to which neither was a party.

The standard clause in the insurance policy providing for subrogation to the mortgagee's right of recovery has been consistently held to be valid by Texas courts as well as those of other jurisdictions. 16 Couch on Insurance, 2d Edition, p. 427, § 61:364 (1966).

In British American Assurance Co. v. Mid-Continent Life Insurance Co., 37 S. W.2d 742 (Tex.Comm'n App.1931), the

court acknowledged the validity of the subrogation clause in the policy and noted the mark of distinction between the liability of the insurance company to the mortgagee and to the insured. The court then said:

"The payment by the insurance company to the mortgagee under the policy on the mortgagor's indebtedness inured to the latter's benefit to the extent his debt was thereby reduced. It, for all practical purposes, constituted a recovery by him under the policy. To deny the insurance company subrogation, under the circumstances, would allow the assured to obtain the full benefit of a policy which because of the violation of its conditions he is not in good conscience entitled to receive. He should not be permitted to receive indirectly a benefit from the policy which the law, because of his conduct, forbids him from receiving directly."

■ Of course it is also well recognized that since the object of the insurance is indemnity the mortgagee should be satisfied before the insurance company is reimbursed. Because of the mortgagee's prior right claims by insurance companies to a "pro rata" distribution of the proceeds have been consistently rejected. Union Assurance Soc. v. Equitable Trust Company, 127 Tex. 618, 94 S.W.2d 1151 (Tex. Comm'n App.1936), and National Ben Franklin Fire Ins. Co. v. Praetorians, 67 S.W.2d 333 (Tex.Civ.App., El Paso 1934, writ ref'd). Although the rights of the mortgagee are admittedly superior to those of the insurance company, until the mortgagee's interest has been extinguished, such does not diminish the insurer's right of subrogation to "all the mortgagee's rights of recovery" and this right obviously refers to the right to enforce the collateral agreement. As stated by the Commission of Appeals in British American Assurance Co., supra:

"* * * In such event the parties have expressly agreed that, upon payment by the insurance company of the loss to the mortgagee, the former shall be entitled to recover through the collateral to which it may be subrogated, money which, as against the mortgagor, it should not have been compelled to pay."

An excellent in depth study and analysis of the authorities on the question of what rights are actually acquired by the insurer upon payment of a portion of the mortgagee's indebtedness, in a situation where the policy as to the mortgagor has become invalid, is contained in the case of Savings Bank of Ansonia v. Schancupp, 108 Conn. 588, 144 A. 36 (Conn.S.Ct. of Errors 1928), 63 A.L.R. 1521, in which the court stated that the effect of the mortgage clause is that, from the time the policy becomes void as to the mortgagor, the insurance is only in favor of the mortgagee on its interest as such, and is not insurance on the property generally, to which the mortgagor, or his successor in interest therein, should be entitled. "That the mortgagee should receive the primary benefit, and the insurers the opportunity for ultimate reimbursement, through such security as the mortgage note and mortgage may afford, accords with the general legal and equitable rights of the parties." "The insurers, through their subrogation, virtually occupy the position of a purchaser from the mortgagee for value. * * * The payment, by them, does not operate to reduce or extinguish the mortgage debt or discharge the mortgage, but to satisfy, pro tanto, the mortgagee's claim and assign it to the insurers, leaving it in full force as against the mortgagor and those claiming under him, with no right, on their part, to claim a reduction of the debt by the payment to the mortgagee."

In Grangers' Mutual Fire Ins. Co. v. Farmers' National Bank, 164 Md. 441, 165 A. 185 (Ct. of App., Md.1933), the facts involved a similar question, as here presented, concerning the right of the insurance company to recover excess proceeds of a foreclosure sale on mortgaged property covered by a policy. The court held that the insurance company was entitled to such

excess amount, and that the payment by the insurance company to the mortgagee did not have the effect of reducing or extinguishing the mortgage indebtedness or discharging the mortgage, but did have the effect of satisfying, pro tanto, the mortgagee's claim and leaving it in full force and effect as against the mortgagor and those claiming under him. To the same effect see Commercial Standard Ins. Co. of Fort Worth, Texas v. Hitson, 73 N.M. 328, 388 P.2d 56 (S.Ct. of N.M.1963); Twin City Fire Insurance Co. v. Walter B. Hannah, Inc., 444 S.W.2d 131 (Ct. of App. of Ky. 1969); Aldridge v. Dixie Fire & Casualty Co., 223 Ga. 130, 153 S.E.2d 723 (S.Ct. of Ga.1967); Washington Fire Ins. Co. v. Cobb, 163 S.W. 608 (Tex.Civ.App., San Antonio 1914); and Annotation in 52 A.L.R. 278.

From these authorities it is evident to us that the subrogation rights acquired by appellant-insurer by its payment of the fire loss to the mortgagee, constituted the same rights in the collateral as had been owned by the mortgagee prior to the payment and the mortgagor, not being privy to the fire insurance contract, was not entitled to receive credit upon his indebtedness to mortgagee or to be relieved of the security obligation to the extent of such payment.

Appellees argue that any right acquired by the insurance company to the mortgaged property is, at the most, an equitable claim of which they had no notice. We cannot agree. When the mortgagor conveyed the property by warranty deed almost simultaneously with the foreclosure sale, Jones expressly and admittedly assumed the mortgage indebtedness which at that time was burdened with the subrogation rights of Quincy Mutual. The law, as above outlined, had expressly given to the insurer paying the loss a right of subrogation to the rights held by the mortgagee. It would be unjust and contrary to all legal principles to allow Jones and Pritchett to step in at the last moment and receive credit for payments made on a mortgage loan which the law had denied the mortga-

gor, who was the predecessor in title. To say that equity would thereby grant benefits in such an indirect manner, when none could be legally claimed directly, does not seem to us to constitute a proper basis of recovery by appellees.

Under these circumstances, and in view of the authorities above cited, it is our judgment that the appellant insurer was entitled to receive the overage payments received by the trustee from the proceeds of the foreclosure sale. Accordingly the trial court should have denied appellees' motion for summary judgment and sustained the motion filed by appellant.

The judgment of the trial court is reversed and judgment here rendered that the District Clerk of Dallas County shall remit the balance of the funds deposited in the registry of the court by Paul C. Jordan, trustee, together with interest accrued thereon, to Quincy Mutual Fire Insurance Company and that all costs, including the sum of $350 as reasonable attorney's fees, to John W. Hicks, Jr., attorney for Paul C. Jordan, trustee, be assessed against J. W. Jones and B. R. Pritchett, jointly.

Reversed and rendered.