# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

NO. 03-04-00453-CV

**Charles E. Willis d/b/a Willis Inspection Service**

**v.**

**Bay North Homeowners Association, Inc.**

FROM THE DISTRICT COURT OF BURNET COUNTY, 33RD JUDICIAL DISTRICT
NO. 21444A, HONORABLE GUILFORD L. JONES, III, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

Charles E. Willis d/b/a Willis Inspection Service appeals a summary judgment granted in favor of Bay North Homeowners Association on Willis's third-party action. Jim and Sandra Breashears sued Willis for an allegedly faulty pre-purchase inspection of their condominium. Willis sued the Association for contribution and indemnity. *See* Tex. Civ. Prac. & Rem. Code Ann. § 33.016(a) (West 1997); Tex. R. Civ. P. 38(a). The Association's summary judgment claimed that Willis could not prevail on his third party action because the Association did not owe a duty to the Breashearses and because there was no evidence that it breached any alleged duty owed to them.

Willis asserts that the district court erred in granting summary judgment for the Association on his derivative claims because the Association owed a duty to the Breashearses as a

matter of law and because there are genuine issues of material fact concerning its breach of that duty. We conclude that the Association should not have prevailed on its motion for summary judgment under rule 166a(c) because it did not negate the issue of its duty to the Breashearses as a matter of law. We also conclude that the Association should not have prevailed on its motion for summary judgment under rule 166a(i) because Willis produced more than a scintilla of evidence raising a genuine issue of material fact on the issue of the Association's breach of its duty. Accordingly, we reverse the summary judgment order and remand to the district court.

## BACKGROUND

Charles Willis is a licensed real estate inspector. In July 2001, Jim and Sandra Breashears hired Willis to conduct a pre-purchase inspection of a condominium located in Horseshoe Bay North, a subdivision in Burnet County. Willis's inspection report identified signs of water penetration in the garage and on the ceiling by the front door, as well as rotted wood on the exterior of the condominium. The report emphasized that "in any area where there is rot/deterioration, there is always the possibility of concealed damage."

In August 2001, the Breashearses purchased the condominium at issue from Michael and Sandra Taylor. The condominium was subject to the covenants in the Horseshoe Bay North Development Supplementary Declaration of Covenants and Restrictions recorded in the deed records of Burnet County. Reservations in the Breashearses' warranty deed from the Taylors made the condominium's conveyance subject to the covenants that were in effect and shown of record in Burnet County.

2

The Covenant for Maintenance Assessments in Article IV, section 2 of the Declaration authorized the Association to collect assessments for the "improvement and maintenance" of the condominium's "building exteriors, including but not limited to repair and replacements thereto." "Building exterior" is defined in the Declaration as "the exterior sides and roof of any permanent structure on any Lot, exclusive of exterior glass surfaces."

The General Provisions in Article VII, section 1 of the Declaration demonstrate that the covenants and restrictions were intended to "run with and bind the land" and

> inure to the benefit of and be enforceable by Bay North Homeowners Association, or the Owner of any land subject to this Declaration, their respective legal representatives, heirs, successors and assigns, for a term of thirty (30) years from the date that this Declaration is recorded,[1] after which time said covenants shall automatically be extended for successive periods of ten (10) years unless an instrument signed by eighty (80%) percent of the then Owners of the Lots has been recorded agreeing to change said covenants and restrictions in whole or in part.

The covenants and restrictions were also intended to be enforceable at law or equity against any person "violating or attempting to violate any covenant or restriction" to restrain the violation, recover damages, or enforce any lien created by the covenants against the land.

Within a month of taking possession, the Breashearses discovered "extensive roof leaks and mold infestation in parts of the house[2] and ventilation system, requiring the house to be almost completely gutted and rebuilt." They sued Willis for negligence, fraud, misrepresentation

---

[1] The Declaration was recorded on June 19, 1981, and is still in its initial thirty-year period.

[2] Although the Breashearses called their property a "house," the pleadings show that their reference is to the condominium unit at issue in this appeal.

and violation of the Deceptive Trade Practices Act. *See* Tex. Bus. & Com. Code Ann. §§ 17.01-.885 (West 2002 & Supp. 2004-05).[3]

Willis filed a third-party action against the Association for contribution and indemnity. The Association answered and sought leave to file a third-party suit against the Breashearses' real estate agents. At the hearing on the motion for leave, counsel for the Breashearses informed the court that he would have to disqualify himself if the court allowed the Breashearses' agents into the suit because of his long-standing representation of the agents' employer. The court *sua sponte* suggested to the Association's counsel,"[I]t seems to me that before we complicate this thing further and possibly conflict out the [Breashearses' counsel] and so forth, perhaps you ought to examine your summary judgment potential."

The Association then sought judgment under Texas Rules of Civil Procedure 166a(c) and 166a(i), denying the existence of a duty to the Breashearses and denying the breach of any alleged duty. They also objected to the affidavits Willis offered to refute their motion. After a hearing, the district court struck the challenged portions of the affidavits and signed an interlocutory order granting the Association's motion without stating the basis for its ruling. The court subsequently severed Willis's claims against the Association. Willis's appeal presents two issues, structured in his brief as a "primary issue" with three "sub-issues," asserting that the district court erred in granting judgment for the Association because the Association owed the Breashearses a duty

---

[3] The Breashearses also sued Michael and Sandra Taylor, who were the condominium sellers, and Kent Lesley, the Taylors' real estate agent. The Breashearses did not sue the Association.

4

as a matter of law and because genuine issues of material fact exist concerning the Association's breach of that duty.

## ANALYSIS

**Standard of Review**

We review the district court's grant of summary judgment *de novo*. *Joe v. Two Thirty Nine Joint Venture*, 145 S.W.3d 150, 156 (Tex. 2004). To prevail on a motion for summary judgment under rule 166a(c), the movant must conclusively negate at least one essential element of the nonmovant's cause of action or conclusively prove each element of its affirmative defense, thereby showing that it is entitled to judgment as a matter of law and that no genuine issues of material fact remain. Tex. R. Civ. P. 166a(c); *Rhone-Poulenc, Inc. v. Steel*, 997 S.W.2d 217, 222-23 (Tex. 1999).

By advancing a motion for judgment under rule 166a(i), the movant asserts that there is no evidence of one or more essential elements of a claim or defense that the nonmovant would have the burden to prove at trial. *See* Tex. R. Civ. P. 166a(i). Unless the nonmovant produces summary judgment evidence raising a genuine issue of material fact on the challenged elements, the court must grant the motion. Tex. R. Civ. P. 166a(i) & cmt. 1997; *Western Invs., Inc. v. Urena*, 162 S.W.3d 547, 550 (Tex. 2005).

In reviewing a no-evidence claim, we view the evidence in a light that tends to support the finding of the disputed fact and disregard all evidence and inferences to the contrary. *Minyard Food Stores, Inc. v. Goodman*, 80 S.W.3d 573, 577 (Tex. 2002). A genuine issue of material fact exists if more than a scintilla of evidence establishing the existence of the challenged

5

element is produced. *Ford Motor Co. v. Ridgeway*, 135 S.W.3d 598, 600 (Tex. 2004). More than a scintilla of evidence exists if the evidence rises to a level that would enable reasonable and fair-minded people to differ in their conclusions. *Id.* Conversely, when evidence offered to prove a vital fact is so weak as to do no more than create a mere surmise or suspicion of its existence, it is no more than a scintilla and, in legal effect, is no evidence. *Id.*

Because the trial court's order granting summary judgment does not specify the basis for the ruling, we must affirm the summary judgment if any of the theories presented to the trial court and preserved for appellate review are meritorious. *See Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 217 (Tex. 2004).

**Willis's Third-Party Claim**

Willis argues that summary judgment was inappropriate because the Association owed the Breashearses a contractual duty to "maintain and/or repair" the building exteriors of their condominium, including the exterior sides and roof. The existence of a legal duty is a question of law for the court to decide, and that determination is made from the facts surrounding the occurrence in question. *Tri v. J.T.T.*, 162 S.W.3d 552, 563 (Tex. 2005).

Under rule 38(a), a defendant may bring a third-party action to join a party who may be liable to the defendant or to the plaintiff for all or part of the plaintiff's claims against the defendant. Tex. R. Civ. P. 38(a). A third-party action is not an independent cause of action, but is derivative of the plaintiff's claim against the responsible third party. *Eslon Thermoplastics v. Dynamic Sys., Inc.*, 49 S.W.3d 891, 902 (Tex. App.—Austin 2001, no pet.) (citing *Shoemake v. Fogel, Ltd.*, 826 S.W.2d 933, 935 (Tex. 1992)). The civil practice and remedies code allows suits

6

against a "contribution defendant" defined as "any defendant, counterdefendant, or third-party defendant from whom any party seeks contribution with respect to any portion of damages for which that party may be liable, but from whom the claimant seeks no relief at the time of submission." Tex. Civ. Prac. & Rem. Code Ann. § 33.016(a).

Willis's pleadings allege that the Association

> owed a duty to the Plaintiffs [Breashearses] to repair, replace and maintain the building exteriors of Plaintiffs' condominium, which include the exterior sides and roof of any permanent structure on any lot. . . . [The Association] breached its duty to maintain and repair the building exteriors of Plaintiffs' home by failing to make repairs and/or by failing to adequately complete all repairs needed.

Because Willis's third-party claims are derivative of the Breashearses' right to recover from the Association, Willis cannot pursue a third-party claim against the Association if the Breashearses cannot bring a direct claim against it. *See Eslon Thermoplastics*, 49 S.W.3d at 902.

**The Association's Duty to the Breashearses as a Matter of Law**

Relying on the Covenant for Maintenance Assessments in the Declaration, Willis contends that the Association had a contractual duty to "maintain and/or repair" the building exteriors of the condominium:

> The Declarant[4] for each Lot owned by it hereby covenants and each Owner of any Lot by acceptance of a deed therefor, whether or not it shall be so expressed in any such deed or other conveyance, shall be deemed to covenant and agree to pay to the

---

[4] The Declaration states that the Declarant, Horseshoe Bay North Development, delegates and assigns to the Association the powers of "maintaining and administering the community" and "administering and enforcing the covenants and restrictions."

7

Association: (1) annual assessments or charges. . . . Said assessments shall . . . be used for the improvement and maintenance of the common properties and the building exteriors, including but not limited to repair and replacements thereto and for the cost of labor, equipment, materials, management, and supervision thereon. . . .

The Association agrees that "the Declaration sets forth a duty by which it must maintain the exteriors of all buildings." It further agrees that the covenant at issue runs with the land and is a contract—but not with the Breashearses. The Association's motion under rule 166a(c) argues that it did not owe a duty to the Breashearses as a matter of law because the repairs, or lack thereof, occurred before the Breashearses owned the condominium. In support of its assertion, the Association pointed to "the sales contract signed by the Breashearses," but it erroneously attached the sales contract for the Taylors' purchase of the condominium. Because the sales contract from the Taylors to the Breashearses is not in the record and was not presented to the district court, it cannot support the Association's summary judgment. *See* Tex. R. Civ. P. 166a(c); *Gandara v. Novasad*, 752 S.W.2d 740, 743 (Tex. App.—Corpus Christi 1988, no writ).

The Association also relies on two cases stating that "one in whose time a covenant running with the land is broken is the proper person to bring an action for the breach thereof, and the conveyance of the fee after such breach does not operate as an assignment of the right of action to the grantee." *Fudge v. Hogge*, 323 S.W.2d 663, 667 (Tex. Civ. App.—Dallas 1959, no writ); *Compton v. Trico Oil Co.*, 120 S.W.2d 534, 538 (Tex. Civ. App.—Dallas 1938, writ ref'd).

The above cases are distinguishable from this one. *Fudge* involved a conflict over a lakesite's dedication to public use and a determination that the statute of limitations began to run when appellees filled the lakesite with dirt, which was an "open and notorious" violation of deed

8

restrictions. 323 S.W.2d at 667. *Compton* involved a title dispute that arose after the assignment of an oil and gas lease to a grantee who took his interest with actual knowledge of the title warranty's breach and with the grantor's promise to "clear up the title." 120 S.W.2d at 538.

A case cited in *Compton* is more parallel to the facts of this case. *See Shannon v. Childers*, 202 S.W. 1030 (Tex. Civ. App.—El Paso 1918, writ ref'd). In *Shannon*, the Shannons conveyed several tracts of land by general warranty deed to Fischer, who later conveyed the same tracts by general warranty deed to Childers. *Id*. at 1030. After a re-survey of the land, Childers learned that the property Fischer had purportedly sold to her had been erroneously surveyed and was nonexistent. *Id*. at 1031. The State voided the erroneous survey. *Id*. Childers sued the Shannons on the covenant of warranty in their deed to Fischer. *Id*. at 1031. The Shannons argued that they had no title to the tract in question at the time they conveyed to Fischer, and because their covenant of warranty was broken when made to Fischer, it ceased to run with the land, leaving no right of action upon the covenant to pass to Fischer's purchaser, Childers. *Id*.

Ruling for Childers, the court noted that the forfeit of the erroneous survey constituted a breach of the covenant of warranty:

> It [the survey's forfeit] was the final act in the complete failure of any shadow of title to the survey, and was a constructive eviction. And since it occurred after the conveyance to Mrs. Childers, the breach of the covenant was finally consummated while she was the owner, and the cause of action arising from the breach then accrued to her. Upon this view of the case, she was not an assignee subsequent to the breach.

*Id*. at 1031-32; *see also Siebert v. Bergman*, 44 S.W. 63, 63-64 (Tex. 1898) (quoting *Post v. Campau*, 3 N.W. 272, 274 (Mich. 1879) (technical breach of covenant may have taken place at time

9

deed was delivered; but as no damage followed from breach until claimant's purchase over ten years later, rule that claimant's right of action is deemed to have arisen at delivery of deed involves this "manifest absurdity: that claimant's remedy was barred before he was damnified; a result that can scarcely be consistent with any just or proper rule of law")).

This case concerns the "extensive" concealed[5] damage resulting from the Association's alleged breach of a covenant to "maintain and/or repair"[6] that went undiscovered and undisclosed, according to the Breashearses, until after they moved into their condominium. Because of this alleged breach, the Breashearses became responsible for exterior condominium maintenance that the Association may not have performed. The Taylors' deed to the Breashearses for the sale of the condominium incorporated the Declaration's covenants by reservation. The Association agrees that the covenant at issue runs with the land, and that "the Declaration sets forth a duty by which it must maintain the exteriors of all buildings." "Improvement and maintenance" of the building exteriors, according to the Declaration, "includ[es] but [is] not limited to repair and replacements" of the "exterior sides and roof of any permanent structure on any Lot, exclusive of exterior glass surfaces." The Association agrees that the Declaration is a contract. Neither party claimed that the Declaration was ambiguous.

---

[5] Willis's report cautioned that a visual inspection of the condominium might not detect the "concealed damage" that was possible in any area with "rot/deterioration."

[6] "Repair" is mentioned as a specific subset of "maintenance" in Article IV, section 2 of the Declaration. The Covenant for Maintenance Assessments states that "improvement and maintenance" of the building exteriors includes but is not limited to "repair and replacement." We will refer to the obligations in this section of the Declaration as the covenant or duty to "maintain."

10

We may determine the parties' rights and obligations under an unambiguous contract as a matter of law. *ACS Investors, Inc. v. McLaughlin*, 943 S.W.2d 426, 430 (Tex. 1997). The Association asserts that after the Taylors conveyed to the Breashearses, the Declaration's covenant to maintain the building exteriors of the condominium ceased running with the land, and without an assignment, the Taylors did not pass any right of action against the Association on that covenant to the Breashearses. But similar to the original covenantors in *Shannon*, the Association's alleged breach of the covenant was "finally consummated" while the Breashearses were the owners of the condominium, and the cause of action arising from the alleged breach then accrued to them. Thus, contrary to the Association's contention, the Breashearses do not require an assignment from the Taylors to sue the Association because the Breashearses' ownership was not subsequent to the alleged breach.

We conclude, as a matter of law, that the Association failed to negate the issue of its duty to the Breashearses. It had an ongoing, contractual duty to maintain the building exteriors of the condominium under its covenant in the Declaration, which ran with the land from the Taylors to the Breashearses. *See Shannon*, 202 S.W. at 1031-32; *see also Siebert*, 44 S.W. at 63-64. Willis's third-party action against the Association is not legally barred because the Breashearses could have brought a direct claim against the Association. *See Eslon Thermoplastics*, 49 S.W.3d at 902. Accordingly, we sustain Willis's first issue.

**Evidence of the Association's Breach of Duty Owed to the Breashearses**

Having established that the Association had a duty to maintain the building exteriors of the Breashearses' condominium, we must decide whether Willis produced more than a scintilla

11

of evidence raising a genuine issue of material fact about the Association's breach of its duty. The Association's motion under rule 166a(i) argues that there is no evidence that it breached a duty to the Breashearses. To refute the Association's motion, Willis produced his inspection report, the affidavit of Francisco Gonzales, and the affidavit of Sandra Breashears. The court struck one statement in Gonzales's affidavit as hearsay.[7]

Willis's July 2001 report stated that the "roof covering" of the condominium was observed from "either ground and/or eave levels," with the use of binoculars. He noted that the concrete/clay roofing tiles showed "normal wear for age," but he found that the "potential for water entry [wa]s present" and recommended "securing the flashing at the fire wall between the two units, above the left overhang area at the left of the house." He also noted that the ceiling in the garage had been repaired "from a roof leak" and that the ceiling by the front door had water stains. He observed multiple locations of rot: on the bottom right side of the overhead garage door trim, on the high soffit at the left front side of the house, on the soffit to the left side of the structure, and on the high soffit at the rear of the house. His report concludes with the following statement, in all capital letters: "In any area where there is rot/deterioration, there is always the possibility of concealed damage."

The affidavit of Francisco Gonzales offers evidence of the condominium's condition before Willis's inspection. Although the court sustained a hearsay objection to one sentence in Gonzales's affidavit, it did not rule on any other objection. In the remaining portion, Gonzales averred that he owns a home improvement company specializing in roofing repair and that he has been in the roofing business for over 30 years. He testified that he has repaired condominiums in

---

[7] The court also struck the hearsay portions of Sandra Breashears's affidavit, but Willis waived any complaint about this ruling by failing to brief this issue. Tex. R. App. P. 38.1(h).

12

the Bay North development in Horseshoe Bay since 1990. He also testified that in the fall of 2000, Charlie Tenbush, an agent for the Association, asked him to meet with an insurance adjuster to inspect the roof of the condominium unit at issue, as well as the adjoining unit.

Gonzales recalled

> [a]t that time, I told Mr. Tenbush and the insurance adjuster that the siding and trim on [the condominium] needed additional repairs. In my opinion, the work needed at that time was routine maintenance and repair due to aging of the structure, and was not due to storm damage. I gave the insurance adjuster an estimate to repair the tile[] damage caused by a storm, at his request. I was paid by Bay North Homeowners Association to replace the broken or loose tiles, only. I turned in a proposal to repair the broken tiles and to change out the rotten siding and trim boards to prevent water penetration.

Gonzales's affidavit, even without the struck sentence, shows that the siding and trim boards, as well as the tiles on the roof of the condominium in question, needed "maintenance and repair" in 2000. The Association paid him "to replace the broken or loose tiles, only" despite the fact that he had proposed completion of the tile repair and "chang[ing] out the rotten siding and trim boards to prevent water penetration."

The Association dismisses this evidence by stating that it "does not show that the repairs were in fact not completed" and that Willis did not "establish" a breach of duty. But Willis did not have to prove that the Association failed to "complete" repairs to defeat the rule 166a(i) motion; he only had to point out evidence raising a fact issue on the Association's breach of its duty to maintain. *See* Tex. R. Civ. P. 166a(i) & cmt. 1997; *Johnson v. Brewer & Pritchard, P.C.*, 73 S.W.3d 193, 207 (Tex. 2002).

13

Willis's evidence shows that the Association only paid for roof tile replacement in 2000, even though Gonzales, their long-time professional roofer, recommended changing the rotten siding and trim boards to prevent water penetration. In 2001, Willis reported that the roofing tiles showed normal wear but the potential for water entry was present. He also noted the rot visible at multiple locations, including the overhead garage door trim and the soffits on the side and rear of the house; he cautioned that concealed damage was possible in any area with rot. Two months after Willis's inspection, the Breashearses discovered their condominium's "extensive leaks."

We find that the chronology of events documented by Willis's report and Gonzales's affidavit would cause reasonable and fair-minded people to differ in their conclusions about whether the Association performed the "improvement and maintenance" of the condominium's "building exteriors" as required by the Declaration. Therefore, we conclude that Willis produced more than a scintilla of evidence raising a genuine issue of material fact concerning the Association's breach of its ongoing, contractual duty to maintain the condominium's building exteriors that was imposed by the Declaration and owed to the Breashearses. Willis's second issue is sustained.

## CONCLUSION

Because the Association did not negate the issue of its duty to the Breashearses as a matter of law, it should not have prevailed on its motion for summary judgment under rule 166a(c). Furthermore, because Willis produced more than a scintilla of evidence raising a genuine issue of material fact on the issue of the Association's breach of its duty, the Association should not have prevailed on its motion for summary judgment under rule 166a(i). Having concluded that the

14

Association was not entitled to judgment under either rule, we reverse the summary judgment order and remand to the district court for further proceedings.

_____

Jan P. Patterson, Justice

Before Chief Justice Law, Justices Patterson and Puryear

Reversed and Remanded

Filed:   August 3, 2005