# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

July 1, 2009

Charles R. Fulbruge III
Clerk

No. 08-40325

DARLENE CROUCH

Plaintiff-Appellant

v.

J C PENNEY CORPORATION, INC.

Defendant-Appellee

Appeal from the United States District Court
for the Eastern District of Texas
USDC No. 4:06-CV-00113

Before BARKSDALE, DENNIS, and ELROD, Circuit Judges.

PER CURIAM:[*]

Darlene Crouch ("Crouch"), the appellant, brought suit against her employer, J C Penney ("JCP"), the appellee, alleging that she was discharged in violation of the Family Medical Leave Act, 29 U.S.C. §§ 2601-54 ("FMLA"), and the Americans with Disabilities Act, 42 U.S.C. §§ 12101-12213 ("ADA"), and that JCP is liable for defamation under state law. The district court granted summary judgment in favor of JCP on all claims. We AFFIRM.

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Crouch, who was hired by JCP in 1983, suffers from recurring bronchitis, which required her to take sick leave several times a year. Crouch applied for and received FMLA approval for her bronchitis-related absences. In August of 2005, Crouch missed seven consecutive days of work for medical absences that, at the time, neither Crouch nor JCP believed were covered by the FMLA. As a result of these absences, one of Crouch's supervisors, Dick Patefield ("Patefield"), emailed Patricia Grant ("Grant"), another supervisor, expressing concern about Crouch's absences. When Crouch returned to work she was put on a Development Plan (essentially a performance improvement plan), which indicated that Crouch had failed to report her FMLA leave in a timely manner. The Development Plan also mentioned several apparently ongoing work performance-related problems, indicating that Crouch had confronted her staff without adequately researching their work, and that she did not follow instructions for implementing new procedures.

In October of 2005, Crouch had an argument with one of her supervisees, Ron Smith ("Smith"), over a change in Smith's work schedule, during which Smith announced he would no longer read company emails. Crouch reported Smith's statement to her supervisors. Smith, in turn, met with Marilyn Ramey ("Ramey"), a Human Resources ("HR") employee, and told Ramey that Crouch raised her voice to employees, told sexually explicit jokes, relayed stories about family violence including her own violent behavior, and made fun of an employee who had to use a colostomy bag. Smith also told Ramey that Crouch had picked up a pocketknife from his desk and pointed it at him in a threatening manner while instructing him to read a document Crouch had sent him. HR initiated an investigation and interviewed other agents in Crouch's department, several of whom corroborated Smith's allegations that Crouch yelled, used profanity, was rude and unprofessional, confronted employees about their behavior aggressively

and in front of their peers, and told inappropriate stories about violence in her own family and her own violent behavior. The investigation also concluded that Smith's story about the knife was true based on comments that Crouch herself made to members of HR. Ultimately Crouch's managers unanimously decided to terminate her employment. The correspondence between the members of JCP management involved in the decision reflects no discussion of her medical condition, her disability or her attendance in the conversations about her termination, apart from a stray mention of the Development Plan.

Crouch filed suit in the district court alleging violations of the FMLA and the ADA, as well as defamation under Texas law. JCP moved for summary judgment, which the district court granted on all of Crouch's claims. Crouch timely appealed.

## II. STANDARD OF REVIEW

We review a grant of summary judgment *de novo*. *Stover v. Hattiesburg Pub. Sch. Dist.*, 549 F.3d 985, 991 (5th Cir. 2008). Summary judgment is appropriate if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). All inferences must be construed in favor of the nonmoving party. *Casey Enters., Inc. v. Am. Hardware Mut. Ins. Co.*, 655 F.2d 598, 602 (5th Cir. 1981).

## III. ANALYSIS

*FMLA & ADA*

The FMLA allows eligible employees to take up to 12 weeks of leave from work in any 12 month period for treatment of a "serious health condition." 29 U.S.C. § 2612(a)(1)(D). The FMLA also protects employees who take FMLA leave

from retaliation for doing so. *Haley v. Alliance Compressor, LLC*, 391 F.3d 644, 649 (5th Cir. 2004). When a plaintiff alleges mixed-motive retaliation (i.e., that discrimination was not the *sole* reason for discharge but was a motivating factor), the governing framework is as follows:

> (1) the employee must make a *prima facie* case of discrimination; (2) the employer must articulate a legitimate, non-discriminatory reason for the adverse employment action; and (3) the employee must offer sufficient evidence to create a genuine issue of fact either that (a) the employer's proffered reason is a pretext for discrimination, or - and herein lies the modifying distinction - (b) that the employer's reason, although true, is but one of the reasons for its conduct, another of which was discrimination. If the employee proves that discrimination was a motivating factor in the employment decision, the burden again shifts to the employer, this time to prove that it would have taken the same action despite the discriminatory animus.

*Richardson v. Monitronics Int'l, Inc.*, 434 F.3d 327, 333 (5th Cir. 2005). The *prima facie* case requires a plaintiff to show that "(1) she engaged in a protected activity, (2) the employer discharged her, and (3) there is a causal link between the protected activity and the discharge." *Id.* at 332.

The parties agree that Crouch was engaged in a protected activity and that she was discharged, but dispute whether she has established the causal link element of her *prima facie* case. Assuming *arguendo* that Crouch has satisfied this element, her claim nevertheless fails. JCP has articulated a legitimate, non-discriminatory reason for the adverse employment action: it received complaints about Crouch's managerial skills, conducted an investigation, confirmed that Crouch's behavior was at best unprofessional and at worst threatening, and decided to terminate her for those reasons. Thus Crouch must show either that this reason is pretextual or that the reason, although true, was only one motive,

another of which was discrimination.[1] The record evidence demonstrates that JCP undertook a thorough investigation of the complaints made about Crouch, and the correspondence between the management team members who decided to terminate her reflects no consideration of the Development Plan or her reporting or use of FMLA leave. Crouch has therefore failed to raise a genuine issue of material fact as to whether JCP's proffered reason for firing her is pretextual. Under a mixed-motive framework, JCP can defend against liability by showing that it would have taken the same action in the absence of any alleged discriminatory animus. In this case the severity of the complaints against Crouch, the results of the investigation, and the lack of discussion of the Development Plan or her use of FMLA leave in the conversations regarding her termination leave no room for a reasonable inference that JCP would not have fired her but for her exercise of her FMLA rights.

Crouch's ADA claim fails for the same reasons. As Crouch acknowledges, her FMLA and ADA claims rise and fall together, because they employ the same burden-shifting framework and rely on the same evidence. *See Hypes ex rel. v. First Commerce Corp.*, 134 F.3d 721, 726 (5th Cir. 1998). The district court properly granted summary judgment on both the FMLA and ADA claims.

*Defamation*

Crouch also claims that JCP is liable for defamation under three theories. She asserts as a first ground that JCP is liable because it had a policy allowing employees to complain to HR, and therefore Smith was acting in the scope of his employment when he did so. Under Texas law an employer is liable for

---

[1] The Supreme Court's recent opinion in *Gross v. FAL Financial Services, Inc.*, 2009 WL 1685684 (2009) raises the question of whether the mixed-motive framework is available to plaintiffs alleging discrimination outside of the Title VII framework. We need not reach this question, however, because Crouch cannot meet either standard.

defamation if the defamation "falls within the scope of the employee's general authority in furtherance of the employer's business and for the accomplishment of the object for which the employee was hired." *Minyard Food Stores, Inc. v. Goodman*, 80 S.W.3d 573, 577 (Tex. 2002). In this case, the alleged defamation took place when an employee (Smith) spoke to his own employer (JCP) about another employee (Crouch). The Texas Supreme Court has explained that even when an employer *requires* employees to discuss other employees in the course of workplace misconduct investigations, such discussions are not "in furtherance of the employer's business and for the accomplishment of the object for which the employee was hired." *Id.* at 577-79.[2] If statements made by an employee to his employer about another employee as part of a *required* workplace investigation cannot give rise to defamation for this reason, JCP cannot be liable for defamation simply because it *allowed* employees to report misconduct to HR.

Crouch's second theory is that JCP is liable for defamation because an HR employee repeated Smith's claim about the knife incident. However, under Texas law an employer has "a conditional or qualified privilege that attaches to communications made in the course of an investigation following a report of employee wrongdoing." *Randall's Food Markets, Inc. v. Johnson*, 891 S.W.2d 640, 646 (Tex. 1995). Once an employer asserts this defense in federal court in a case

---

[2] As the Texas Supreme Court explained:

> While we agree the evidence demonstrates that [the company's] policies require employees to participate in workplace misconduct investigations-just as [the employee] did here-these policies do not demonstrate that [the employee] defaming [the plaintiff] to [the manager] during the investigation would further [the company's] business and accomplish a purpose of [the employee's] job. There is a critical distinction between defaming someone *to* one's employer and defaming someone *for* one's employer.

*Minyard*, 80 S.W.3d at 579 (Tex. 2002) (emphasis added). We also note that the implications of the plaintiff's interpretation are highly problematic: it is not only useful but sometimes legally required that employers provide a method by which employees can bring complaints of employee misconduct to the employer's attention, and holding employers liable for defamation when employees take advantage of these processes would create perverse incentives.

under Texas law, the plaintiff must prove actual malice to survive summary judgment. *Duffy v. Leading Edge Prods., Inc.*, 44 F.3d 308, 314 (5th Cir. 1995).[3] Crouch has not produced any evidence of actual malice: to the contrary, the HR investigator believed the knife story to be true based on her conversations with Crouch herself.

Finally, Crouch argues JCP is liable for defamation due to its "excessive publication" of the knife story, which would defeat JCP's qualified privilege as an employer under Texas law. *Randall's Food Markets*, 891 S.W.2d at 646. In order to show excessive publication, the plaintiff must identify the speaker and the specific nature of what was said. *Ameen v. Merck & Co.,* 226 F. App'x 363, 371 (5th Cir. 2007) (unpublished) (citing *Abbott v. Pollock*, 946 S.W.2d 513, 520 (Tex. App.–Austin 1997, writ denied)). Crouch was unable to do so, presenting only evidence that another employee testified that the story was common knowledge. This is exactly the kind of "unauthorized gossip" that does not qualify as excessive publication. *See Danawala v. Houston Lighting & Power Co.*, 14 F.3d 251, 255 (5th Cir. 1993).

## IV. CONCLUSION

For the foregoing reasons, we AFFIRM the grant of summary judgment.

---

[3] Actual malice is "the making of a statement with knowledge that it is false, or with reckless disregard of whether it is true." *Duffy*, 44 F.3d at 313 (quoting *Carr v. Brasher*, 776 S.W.2d 567, 571 (Tex. 1989)). "Reckless disregard" is "a high degree of awareness of probable falsity, for proof of which the plaintiff must present 'sufficient evidence to permit the conclusion that the defendant in fact entertained serious doubts as to the truth of his publication.'" *Id.* (quoting *Carr*, 776 S.W.2d at 571). Proof of falsity is not sufficient, nor is a combination of falsity and general hostility towards the plaintiff. *Danawala v. Houston Lighting & Power Co.*, 14 F.3d 251, 255 (5th Cir. 1993).