NUMBER 13-04-670-CV



COURT OF APPEALS



THIRTEENTH DISTRICT OF TEXAS



CORPUS CHRISTI - EDINBURG 


 


CELESTINA ADAME, ET AL., Appellants,


v.



LAW OFFICE OF ALLISON & 

HUERTA, A TEXAS GENERAL

PARTNERSHIP, ET AL., Appellees.







On appeal from the 94th District Court of Nueces County, Texas.


 


MEMORANDUM OPINION



Before Justices Yañez, Rodriguez, and Wittig (1)


Memorandum Opinion by Justice Wittig


 

 This is a summary judgment case. Appellants Celestina Adame, individually and
as next friend of Erica Adame, a minor, et al., first challenge the jurisdiction of the trial court
to hear motions for summary judgment filed by appellees, Law Offices of Allison & Huerta,
a Texas General Partnership, et al. If the visiting judge assigned to hear the matter had
jurisdiction, then appellants contend the trial court erred by granting appellees' motions for
summary judgment, and not granting their motion for new trial. We affirm the judgment of
the trial court.

 I. Assigned Visiting Judge: Jurisdiction

 In the underlying litigation, appellees were involved in securing a $65,700,000
settlement of a class action, toxic-tort case. On June 30, 1995, the trial court converted
the class action suit from an "opt out" class into a "mandatory" class. Some 505 dissident
members of the class appealed this order, but over time, all but a very few settled their
cases and dropped their appeals. On September 12, 1995, the 105th District Court of
Nueces County held a rule 42 "fairness hearing," and approved the final class settlement
by its Order and Dismissal With Prejudice. Some dissidents, appellants herein, filed
malpractice and related claims against appellees. On February 9, 1999, the presiding
administrative judge assigned Former District Judge Robert Pate to hear all matters in this
malpractice case. The assignment continued so long as necessary to complete the trial,
pass on motions for new trial, and all other matters.

 Before an earlier appeal, appellees filed motions for summary judgment which were
granted by Judge Pate. Appeal was taken from the prior summary judgments to our Court. 
We dismissed this appeal of the initial summary judgments for want of jurisdiction. Adame
v. Huerta, No. 13-00-781-CV, 2003 LEXIS Tex. App. 7115, *1 (Tex. App.-Corpus Christi,
Aug. 21,2003, no pet.) (not designated for publication). We ruled that the judgment was
not final because it did not dispose of all issues or parties. Thereafter, additional summary
judgment motions were filed and again heard by Judge Pate. The trial judge again granted
the motions for summary judgment, now the subject of this appeal.

 Hearings for the summary judgments were set on September 23 and 24, 2004. 
Notice of hearings was sent on July 23, 2004. On September 15, 2004, appellants filed
three objections to Judge Pate for the first time, even though he had been appointed to this
case in 1999. Judge Pate heard the objections September 23, 2004, and entered a
detailed order overruling the objections to the visiting judge. In the order, the trial court
found that he was properly assigned for as long as necessary to complete the trial and
hear the motion for new trial, et cetera. Because the Thirteenth Court of Appeals
dismissed the earlier appeal for want of jurisdiction, the trial court never lost jurisdiction. 
Therefore, the assignment of Judge Pate was still effective and continuing. 

 Appellants have not challenged any of the findings of this order.

 Appellants argue all orders issued by Judge Pate after the initial appeal are null and
void. They cite Starnes v. Chapman, 793 S.W.2d 104, 106 (Tex. App.-Dallas, 1990 orig.
proceeding) (citing Tex. R. Civ. P. 329(b); First City Bank v. Salinas, 754 S.W.2d 497, 498
(Tex. App.- Corpus Christi 1988, orig. proceeding)). Starnes holds that when the time
periods for filing and ruling on motions for new trial on a judgment expired, and an appeal
was perfected, the visiting judge's plenary power over the cause expired, as did his
assignment. Id. We do not disagree. However, subject to appellate rule 29.5, a trial court
retains plenary jurisdiction, and therefore power over its interlocutory orders, until it enters
a final judgment. Tex. R. App. P. 29.5; Fruehauf Corp. v. Carrillo, 848 S.W.2d 83, 84 (Tex.
1993). The trial court's plenary power is "full, entire, complete, absolute, perfect, [and]
unqualified." Orion Enter., Inc. v. Pope, 927 S.W.2d 654, 658 (Tex. App.-San Antonio
1996, no writ) (orig. proceeding).

 In this case, we previously held there was no final, appealable judgment before this
Court over which we had jurisdiction, and we did not merely abate the appeal until a final
order was before us. Adame, 2003 Tex. App. LEXIS 7115, at *17. A judgment is final if
it disposes of all pending parties and claims in the record. First Nat'l Bank v. De
Villagomez, 54 S.W.3d 345, 348 (Tex. App.-Corpus Christi 2001, pet. denied). This Court
was without power to review the orders granting summary judgment. Adame, 2003 Tex.
App. LEXIS 7115, at *17. We concluded: "The appeal must be, and hereby is, dismissed
for want of jurisdiction." Id. Thus, because no final judgment had yet been entered, the
trial court had the power to amend the temporary orders it had previously issued until it
entered a final judgment. Tex. R. App. P. 29.5; Fruehauf Corp., 848 S.W.2d at 84; The trial
court retained full, entire, and complete powers. See Orion Enter., Inc., 927 S.W.2d at
658. 

 Appellants also argue that even if their objection to Judge Pate was procedurally
defective, it should have been referred to another judge to make that determination. They
contend that when a trial judge is "challenged," it has only two options: (1) grant the
challenge; or (2) refer the challenge for a hearing before another judge. Appellants rely
in part upon civil procedure rule 18a(d). See Tex. R. Civ. P. 18.a(d). This rule pertains to
recusal or disqualification of a judge. Id. Appellants' three motions did not seek to either
recuse or disqualify Judge Pate. Nor does the record disclose grounds for recusal or
disqualification of the visiting judge. Rather, the objections were directed at the
assignment of Judge Pate as a visiting judge and the argument above that he had lost
jurisdiction.

 Appellants also cite Ex parte Eastland, 811 S.W.2d 571, 572 (Tex. 1991). There, 
under the terms of the letter of assignment, the visiting judge's jurisdiction over the
disbarment proceeding was to continue only as long as necessary to complete the trial of
the case and to pass on any motions for new trial. Id. Since no motion for new trial was
filed in the case, his authority expired thirty days after judgment. Id. We agree with the
reasoning of that case, but find it inapplicable herein. Under the "law of the case," we have
already held that there was no final judgment signed before the last set of summary
judgment motions now before us. Adame, 2003 Tex. App. LEXIS 7115, at *17; see
Hudson v. Wakefield, 711 S.W.2d 628, 630 (Tex. 1986) (by narrowing the issues in
successive stages of the litigation, the law of the case doctrine is intended to achieve
uniformity of decision as well as judicial economy and efficiency).

 Appellants also cite In re Canales, 52 S.W.3d 698, 701 (Tex. 2001). If an objection
is timely, the assigned judge's disqualification is automatic. Id. When an assigned judge
overrules a timely objection to his assignment, all of the judge's subsequent orders are void
and the objecting party is entitled to mandamus relief. Id. We note, however, as argued
by appellees, an objection to a judge assigned under chapter 74 is timely if it is filed before
the very first hearing or trial in the case, including pretrial hearings, over which the assigned
judge is to preside - without regard to the terms of the particular order under which the
judge is assigned. Id. at 704. Once an assigned judge has heard any matter in a case, the
parties have waived the right to object to that judge under section 74.053 of the government
code. Id. at 704. Judge Pate heard multiple matters dating from the time of his assignment
in 1999 before objections to his assignment were belatedly filed in 2004. Accordingly, we
agree that appellants waived their right to object to Judge Pate.

 A trial court has plenary power over its judgment until it becomes final. Mathes v.
Kelton, 569 S.W.2d 876, 878 (Tex. 1978); Transamerican Leasing Co. v. Three Bears, Inc.,
567 S.W.2d 799, 800 (Tex. 1978). The trial court also retains continuing control over
interlocutory orders and has the power to set those orders aside any time before a final
judgment is entered. Texas Crushed Stone Co. v. Weeks, 390 S.W.2d 846, 849 (Tex. Civ.
App.-Austin 1965, writ ref'd n.r.e.). We therefore overrule appellants' issues one and three.

 II. Summary Judgment Complaints

 A. Standard of Review

 A party may move for summary judgment under rule 166a(i) on the ground that there
is no evidence of one or more essential elements of a claim or defense on which an
adverse party would have the burden of proof at trial. Tex. R. Civ. P. 166a(i); W.
Investments, Inc. v. Urena, 162 S.W.3d 547, 557 (Tex. 2005); Duvall v. Texas Dep't of
Human Servs., 82 S.W.3d 474, 477 (Tex. App.-Austin 2002, no pet.). Unless the
nonmovant produces summary judgment evidence raising a genuine issue of material fact
on the challenged elements, the court must grant the motion. Tex. R. Civ. P. 166a(i) & cmt.;
Urena, 162 S.W.3d at 548; Duvall, 82 S.W.3d at 477-78.

 In reviewing a no-evidence claim, we view the evidence in a light that tends to support
the finding of the disputed fact and disregard all evidence and inferences to the contrary.
Minyard Food Stores, Inc. v. Goodman, 80 S.W.3d 573, 577 (Tex. 2002); Duvall, 82 S.W.3d
at 478. If more than a scintilla of evidence exists, it is legally sufficient. Goodman, 80
S.W.3d at 577. Evidence is more than a scintilla when it rises to the level that would enable
reasonable and fair-minded people to differ in their conclusions. Duvall, 82 S.W.3d at 478.
But when evidence offered to prove a vital fact is so weak as to do no more than create a
mere surmise or suspicion of its existence, it is no more than a scintilla and, in legal effect,
is no evidence. Ford Motor Co. v. Ridgway, 135 S.W.3d 598, 600 (Tex. 2004); Duvall, 82
S.W.3d at 478. 

 Because the trial court's order does not specify the grounds for granting summary
judgment, we must affirm the summary judgment if any of the theories presented to the trial
court and preserved for appellate review are meritorious. Provident Life & Accident Ins. Co.
v. Knott, 128 S.W.3d 211, 217 (Tex. 2004). A no-evidence summary judgment is improperly
granted if the non-movant presents more than a scintilla of probative evidence to raise a
genuine issue of material fact. Lampasas v. Spring Center, Inc., 988 S.W.2d 428, 432 (Tex.
App.-Houston [14th Dist.] 1999, no pet.). Evidence favorable to the non-movant will be
taken as true in deciding whether there is a disputed material fact issue that precludes
summary judgment. Nixon v. Mr. Property Mgmt. Co., 690 S.W.2d 546, 548-49 (Tex. 1985). 
Every reasonable inference must be indulged in favor of the non-movant and any doubt
resolved in its favor. Id. at 549.

 Summary judgment under rule 166a(c) is proper only when a movant establishes that
there is no genuine issue of material fact and that the movant is entitled to judgment as a
matter of law. Tex. R. Civ. P. 166a(c); Randall's Food Mkts., Inc. v. Johnson, 891 S.W.2d
640, 644 (Tex. 1995). We review a summary judgment de novo. Valence Operating Co. v.
Dorsett, 164 S.W.3d 656, 661 (Tex. 2005). A defendant is entitled to summary judgment if
the evidence disproves as a matter of law at least one element of each of the plaintiff's
causes of action or if the evidence conclusively establishes all elements of an affirmative
defense. See Randall's, 891 S.W.2d at 644. Where the trial court grants the judgment
without specifying the grounds, we affirm the summary judgment if any of the grounds
presented are meritorious. FM Props. Operating Co. v. City of Austin, 22 S.W.3d 868,
872-73 (Tex. 2000).

 B. Application

 We next determine if appellants offered some evidence on each of the elements of
their malpractice and other claims against appellees under rule 166a(i). Tex. R. Civ. P.
166a(i) . Appellants were required to show proof that: (1) appellees, as attorneys, owed a
duty to appellants; (2) appellees breached that duty; (3) the breach proximately caused
appellants' injuries; and (4) damages resulted. See Alexander v. Turtur & Assocs., 146
S.W.3d 113, 117 (Tex. 2004) (citing Peeler v. Hughes & Luce, 909 S.W.2d 494, 496 (Tex.
1995)). 

 Appellees argue that appellants provided no evidence of causation of damages. We
agree. Here, the alleged claims involved complex issues concerning the finality of the
underlying class action case, appellate procedure, settlement, the effect of rule 42(c)(3),
class opt outs, and other related issues. Under these circumstances, expert testimony on
proximate cause is clearly required because the issue is not one that lay persons are
competent to determine. Id. at 120. Further, the causal nexus between the event sued upon
and a plaintiff's injuries is "strictly referable" to the damages portion of the plaintiff's cause
of action. See Morgan v. Compugraphic Corp., 675 S.W.2d 729, 732 (Tex. 1984). Even if
a defendant's liability has been established, proof of this causal nexus is necessary to
ascertain the amount of damages to which the plaintiff is entitled. Id. This is true because
the plaintiff is entitled to recover damages only for those injuries caused by the event made
the basis of suit. See id. 

 Appellants take the position that their damages are the difference between settlement
monies received by some dissident appellants, $5,500, (2) compared to the $20,000 received
by about 22 other dissident plaintiffs, who held out two years longer on an appeal of the
mandatory class recertification order. (3) Appellants did not point out to the trial court or to us
any evidence, much less expert testimony, that OxyChem, the defendant in the underlying
class action, would have separately settled individually, or as a group, for more than the
class action structured amount. Nor do appellants point to any evidence that a prospective
trial would have yielded appellants greater damages. To the contrary, the representative
plaintiffs who actually tried their cases received far less monies than received under the
class structure. A majority of the representative plaintiffs were awarded no damages in the
twelve cases actually tried.

 In a response to a no-evidence ground for summary judgment, a nonmovant need not
marshal her proof; however, her summary judgment response needs to point out evidence
that raises a genuine issue of fact as to the challenged elements. San Saba Energy, L.P.
v. Crawford, 171 S.W.3d 323, 330 (Tex. App.-Houston [14th Dist.] 2005, no pet.). The law
is clear. If a nonmovant's response fails to set forth valid reasons why summary judgment
should not be granted and if the motion and summary judgment evidence show that there
is no genuine issue of material fact and that the movant is entitled to judgment as a matter
of law on the grounds asserted in the motion, then the trial court should grant summary
judgment. Id. at 329. Appellant provided no competent proof on the essential elements of
causation and damages. Tex. R. Civ. P. 166a(i) . We therefore overrule those portions of
appellants' issues here discussed. 

 C. Breach of Fiduciary Duty

 Appellants argue that they need not prove actual damages in order to recover against
their attorneys for a breach of fiduciary duty. We agree. See Burrow v. Arce, 997 S.W.2d
229, 240 (Tex. 1999) (concluding that a client need not prove actual damages in order to
obtain forfeiture of an attorney's fee for the attorney's breach of fiduciary duty to the client). 
As a rule, a person who renders service to another in a relationship of trust may be denied
compensation for his service if he breaches that trust. Id. at 237. We then address whether
or not appellants brought forth some evidence that appellees did in fact breach a fiduciary
duty. 

 Appellants argue that appellees' employees undertook to advise dissident class
members individually, and as a group, that they should drop their appeals of the order
recertifying the group as a mandatory class. Appellants claim that "[a]ppellees intended
Appellants to believe that they would recover nothing from their pursuit of such appeal...." 
Appellants admit that no lawyers from appellees' firms were present when the dissidents
were contacted. Appellants also contend that in some manner, appellees, as attorneys,
"neither properly instructed nor supervised in what was said...."

 Appellants further argue that appellees were "desperate" to get rid of the dissidents'
appeals. They wanted all, or most all appellants to dismiss their appeals. To accomplish
the dismissal of the dissidents' appeals, some of the law firms' investigators, videographers
and legal secretaries were sent out to talk with appellants, with the permission of their own
private attorney, Hector P. Gonzalez, who represented them on the appeal. When the
employees went out, at least two of appellees' associate attorneys were available by phone
to answer any inquiries by the dissidents. 

 Appellants point to the deposition testimony of one of appellees' attorneys, Steve
Hastings. He testified that the lay persons only had authority to present the settlement
distribution proposal to Gonzalez's clients. According to Hastings, "[w]e did not ask to
discuss the relative merits of the appeal with these people." "We just said, 'Here's the
settlement proposal. You can be treated like everybody else in this case. If you want the
money, you'll need to dismiss your appeal.'" Hastings testified that the instructions to their
firm personnel was to tell dissidents they had permission from Gonzalez to talk with them,
present the settlement proposal, tell the plaintiffs the settlement category they fit in, and how
much their portion of the settlement would be. The firm personnel did not advise them to
drop their appeals as such. "If you would like to accept the settlement, the first step is we
have to get 90 percent of the people to drop their appeals. Do you want to drop your
appeal?" If 80 or 90 percent did not drop their appeal, the settlement would fail and no one,
including the dissidents, would receive any money from the class settlement. (4)

 Hastings did not know if the firm's people advised the dissidents that they might get
more money if they continued appealing, might get less, or might get no money. Hastings
denied any conflict of interest as class counsel because Gonzalez represented the
dissidents, and the firm secured his permission to talk with his clients. Hastings did not know
if any of the dissidents were informed that if their appeal was lost, they still could have taken
the class settlement. Alberto Huerta also testified the dissidents were told that if they
needed information about their appeal, they needed to talk with Gonzalez, their attorney.

 Arthur Meru, a legal assistant for Allison & Huerta, testified by deposition that he and
others were dispatched to secure releases of all the people involved in the class action case
against OxyChem. There were two forms: a release and a dismissal of appeal. All of the
firm personnel sent out to obtain the releases were instructed to say the same thing. If the
plaintiffs had any questions, they could call the attorneys on duty. The firm personnel could
not answer a lot of questions because "I guess we were ignorant to what was going on with
all the forms and stuff." Their job was to get the people to sign or no one was going to get
any money.

 Appellants insist appellees breached their duties to appellants by not adequately, fully
and candidly disclosing all information pertinent to the circumstances involving the settlement
and the potential value of their appeals, and instead convinced appellants by false and
misleading statements to dismiss their appeals and settle their claims in the class settlement. 
Appellants do not point to any proof of false or misleading statements. 

 Appellants judicially admit that they do not contend that appellees, as class counsel,
were obligated to assist dissident class members to reach or maintain their dissident goals. 
Appellants conclude that the law is clear that fiduciary duties apply to class counsel as to
members of the class. This is particularly true as to representation of class members in
respect to settlement of their claims. See Gen. Motors Corp. v. Bloyed, 916 S.W.2d 949,
954-955 (Tex. 1996). We do not disagree. Once the parties enter into an attorney-client
relationship, the attorney owes fiduciary duties to his client. See Willis v. Maverick, 760
S.W.2d 642, 645 (Tex.1988). 

 It is an agent's disloyalty, not any resulting harm, that violates the fiduciary
relationship and thus impairs the basis for compensation. Burrows, 997 S.W.2d at 238. An
agent's compensation is not only for specific results, but also for loyalty. Id. The main
purpose of forfeiture is not to compensate an injured principal, even though it may have that
effect. Id. Rather, the central purpose of the equitable remedy of forfeiture is to protect
relationships of trust by discouraging an agent's disloyalty. Id. In addition to his position of
trust and confidence with respect to his client, an attorney also has a legally imposed duty
to disclose facts material to his representation. McClung v. Johnson, 620 S.W.2d 644, 647
(Tex. App.-Corpus Christi 1981, writ ref'd, n.r.e.) (citing Rice v. Forestier, 415 S.W.2d 711
(Tex. Civ. App. - San Antonio 1967, writ ref'd, n.r.e.).

 Generally, conflicts of interest in class actions arise amidst concerns that class
counsel has been tempted to further its own interest in securing exorbitant fees as against
the interests of the class members. See Bloyed, 916 S.W.2d at 953. Clearly, class counsel
owes a fiduciary duty to protect the interests of absent class members. Id. However, no
conflict of interest arises simply because different subclasses are designated as part of a
settlement fund. Farmers Ins. Exchange v. Leonard, 125 S.W.3d 55, 65-66 (Tex. App.-
Austin 2003, no pet.). 

 We reject appellants' arguments concerning a breach of fiduciary duty, for several
reasons. First, the record shows that both appellees and their employees only had
permission to discuss the merits of the class settlement. Appellees and their employees
could not and did not discuss the merits of the dissidents' appeal. The class members,
including the dissidents, had all been informed of the proposed class settlement. Attorney
Gonzalez, as representative of the dissidents, spoke with his dissident clients and fully
informed them of their rights to various settlement amounts within the class, as well as what
they could expect on appeal. Gonzalez gave appellees permission to talk to his clients
specifically about the class settlement itself, not about the particulars of the appeals options. 
The record reflects that appellees' employees were instructed not to respond if they were
asked a legal question. Attorneys were available to answer legal questions of the class and
the dissidents. The employees were given the documents "to be signed so that they would
be opting in or dropping their appeal." The employees were given a limited script. "We don't
want you to go outside of this because we want it to be uniform. Because they knew that if
one person was told something different than the other, we'd get inundated with phone
calls."

 The record reflects no proof from any dissident or other source that he or she was
given false or injurious information. Rather, we are left to speculate that some of appellees'
employees may have misled or that they somehow failed to faithfully perform the very limited
task assigned to them by the law firms. Given the limited scope of their assignment and the
equally limited scope of their permission to speak with the dissident plaintiffs, we find no
evidence the firms' employees either exceeded their limited permission to speak or mislead
the Gonzalez plaintiffs to whom they spoke. See Ford Motor Co., 135 S.W.3d at 600. In
short, appellees' employees did not possess the authority to discuss the relative merits of
the dissidents' appeals. Nor is there any evidence appellees or their employees actually did
so. 

 Secondly, appellants seek to narrowly focus only on the 1995 specific mission of
certain employees of the law firms to obtain releases and dismissal of some of the appeals
and some alleged isolated communications of several employees. Appellants ignore multiple
informational meetings as well as court hearings that were needed to conclude and approve
the class settlement. (5) The record demonstrates that attorneys were on call to answer any
questions by any members of the class. Furthermore, there were extensive discussions of
the settlement and its effect given by the class attorneys. Appellees set up special offices
in Robstown to accommodate class members. Additionally, dissidents' counsel, Mr.
Gonzalez, was present for at least one of the meetings at the High Chaparral to discuss not
only the class settlement, but also the dissidents' appeal rights vis a vis the class settlement. 
Gonzalez spoke to his clients in Spanish. Some 128 of the dissidents then remaining in the
appeal chose to accept the class settlement on that date and to dismiss their appeals. 
Members of the class, including dissidents, were shown videos, given brochures, and
attended meetings with opportunities for questions and answers. Appellants ignore the
totality of information given to the class and the dissidents.

 Class counsel also provided a letter to class members which appellants mention, but
either failed to include in the record or assign attention thereto by proper citation to the
voluminous record. See Tex. R. App. P. 38.1(f). (6)

 Some 232 dissidents signed affidavits stating in much detail the information given to
them concerning both the settlement and their dissident appeal. The 232 affidavits stated
that the plaintiffs were informed there was a strong probability they would win their appeal
but there was no guarantee they could get more money from the class or that they would get
any money. Attorney Gonzalez advised them that he should be present during other
settlement proceedings to protect their rights in the event the appeal was not successful. 
Gonzalez believed the distribution of funds by categories under the class settlement was fair. 
The affiants gave Gonzalez permission to support the disbursement of funds by category
while at the same time prosecuting the appeal "so that my case does not have to fall within
the mandatory class."

 The trial court itself held fairness hearings under rule 42. See Tex. R. Civ. P. 42. It
is true, as appellees agree, that the fiduciary relationship requires a full and fair disclosure
of the terms of a proposed settlement. Bloyed, 916 S.W.2d at 951-952. Nevertheless,
appellants do not point to any evidence to prove that a single dissident claims he or she did
not receive adequate information and fair disclosure. To the contrary, the record reveals
considerable information was disseminated to the class. Rather than presenting summary
judgment proof that appellees where somehow disloyal to or misled one or more dissidents,
appellants choose to rely upon conjecture and weak circumstantial evidence. It is conjecture 
that "Appellees intended Appellants to believe that they would recover nothing from their
pursuit of such appeal...." 

 Weak circumstantial evidence could possibly give rise to an inference that appellees,
though their employees, undertook "to advise" dissident class members that they should
drop their appeals of the order certifying the group as a mandatory class. However, when
circumstances are consistent with either of two facts, and nothing shows that one is more
probable than the other, neither fact can be inferred. Litton Industrial Products, Inc. v.
Gammage, 668 S.W.2d 319, 324 (Tex. 1984). Here, direct evidence reveals appellees
employees were instructed not to advise any of the class members on the merits of the
appeals. Appellees did not have permission to discuss the merits of their appeals. Finally,
appellants offered no evidence that appellees as attorneys "neither properly instructed nor
supervised in what was said..." 

 We disagree with appellants' attempts to focus on a singular contact by one of the
law firms' employees as a basis to contend that appellees breached any fiduciary duties to
appellants, particularly when they point to no evidence that any dissident actually gave up
their appeal as a result of anything improper either appellees, or their employees, said or did
not say.

 Third, class counsel's primary obligation and duty was to the class itself. As
appellants admit, it was not appellees' responsibility to represent the dissidents apart from
their class representation. In fact, to represent the dissidents in connection with their appeal
would have created a conflict of interest between class counsel and the class itself. Class
counsel owes no duty to promote a position inconsistent with the definition of the class or
contrary to the law. Bilodeau v. Webb, 170 S.W.3d 904, 915-916 (Tex. App.-Corpus Christi
2005, pet. denied). "Logically, there is no breach of the fiduciary duty by class counsel
where no duty is owed to act in the manner as contended and, indeed, where to so act would
result in a breach of fiduciary duty." Id. A conflict of interest among clients may give rise to
an attorney's duty to withdraw from a representation. SMWNPF Holdings, Inc. v. Devore,
165 F.3d 360, 365 (5th Cir. 1999). Absent consent, an attorney must discontinue
employment if he is required to represent one or more clients who may have differing
interests. Id. (citing Baptist Memorial Hosp. Sys. v. Bashara, 685 S.W.2d 352, 356 (Tex. Ct.
App.- San Antonio,1984); Lott v. Ayres, 611 S.W.2d 473, 476 (Tex. Ct. App.- Dallas,1981)). 
Thus, had appellees actually undertaken to advise the dissidents concerning their appeal,
appellees would have created a conflict of interest with the class as a whole.

 The record shows that both class counsel and Mr. Gonzalez, though adversarial, took
extraordinary steps to avoid a conflict of interest that would have disqualified class counsel
after years of representation, including the underlying trial that gave rise to a favorable
settlement.

 The law is settled that an attorney is a special agent and all the doctrines of special
agency must apply. Greneaux v. Wheeler, 6 Tex. 515 (Tex. 1851); see also SMWNPF
Holdings, Inc. v. Devore, 165 F.3d 360, 364-65 (5th Cir. 1999) (citing Duval County Ranch
Co. v. Alamo Lumber Co., 663 S.W.2d 627, 633 (Tex. Ct .App.- Amarillo,1983) (recognizing
that an attorney is a "special" agent, whose power and authority is confined to "those powers
necessary to the proper fulfillment of the duties cast upon him by such employment")). In
the context of this case, appellees' non-lawyer employees were in turn sub-agents of the law
firms. As a special agent, an attorney's powers and authority are confined to those
necessary to the proper fulfillment of the duties cast upon him by his employment. See
Heine v. Schendel, 797 S.W.2d 278, 280 (Tex. App.-Corpus Christi 1990, writ denied) (citing
Hotel Longview v. Pittman, 276 S.W.2d 915, 919 (Tex. Civ. App.-Texarkana 1955, writ ref'd
n.r.e.)).

 Fourth, a rule 42 hearing was conducted by the trial judge. He concluded that class
counsel adequately and properly represented the class. The allegations now brought by
some few dissidents are a collateral attack on the findings of the court. A collateral attack
is an attempt to avoid the effect of a judgment in a proceeding brought for some other
purpose. Ranger Ins. Co. v. Rogers, 530 S.W.2d 162, 167 (Tex. Civ. App.-Austin 1975, writ
ref'd n.r.e.). The grounds upon which a collateral attack may be successful are that the court
rendering judgment has: (1) no jurisdiction of the person of a party, or his property, (2) no
jurisdiction of the subject matter of the suit, (3) no jurisdiction to enter the particular judgment
entered, or (4) no capacity to act as a court. Id. The Texas Supreme Court has reiterated
this holding that a final judgment from a court of general jurisdiction is not subject to
collateral attack in other courts of equal jurisdiction unless the first judgment is void. 
Browning v. Placke, 698 S.W.2d 362, 363, (Tex. 1985) (orig. proceeding) (citing Austin
Indep. School Dist. v. Sierra Club, 495 S.W.2d 878, 881, (Tex. 1973)); see also Fiallos v.
Pagan-Lewis Motors, Inc., 147 S.W.3d 578, 586 (Tex. App.-Corpus Christi 2004, pet.
denied; Baze v. Marine Office of Am. Corp., 828 S.W.2d 152, 156 (Tex. App.-Corpus Christi
1992, no writ). 

 We recognize the potential for abuse of the class action procedure, which in turn,
underscores the importance of the trial court's obligation to determine that the protective
requirements of Texas Rule of Civil Procedure 42 are met when the trial court approves a
class action settlement. Bloyed, 916 S.W.2d at 954-55. Typically, the trial court plays a
relatively detached role in most civil proceedings, but in a class action, the court is the
guardian of the class interest. Id. (citing Weinberger v. Kendrick, 698 F.2d 61, 69 n.10 (2d
Cir. 1982); In re "Agent Orange" Prod. Liab. Litig., 818 F.2d 216, 223 (2d Cir.); In re
Corrugated Container Antitrust Litig., 643 F.2d 195, 225 (5th Cir. 1981); Piambino v. Bailey,
610 F.2d 1306, 1327 (5th Cir. 1980); 2 Newberg & Conte, § 11.41, at 11-93 to 11-94.)) The
trial court bears the burden under rule 42 to police the proceeding to minimize conflicts of
interest and, primarily, to protect absent class members. Id. (citing In re Gen. Motors Corp.,
55 F.3d at 785 n.1).

 On August 18, 1995, the trial court conducted a rule 42 hearing. The dissident class
members were themselves separately represented by Mr. Gonzalez. At the hearing,
dissident counsel requested that his objection to the hearing be overruled. He then departed
the courtroom, having presented no witnesses or other evidence. The dissidents' objections
were overruled as requested. The trial court ruled that all requirements of rule 42 had been
met. The court found the settlement was fundamentally fair, adequate and reasonable, and
protected the rights of the mandatory class. The class settlement was approved and all
settled claims were dismissed with prejudice. The order approved the payment of attorneys'
fee to appellees. The court reserved jurisdiction over implementing the settlement. The
Order of Dismissal with prejudice was signed and entered September 12,1995. The
dismissal also acknowledged that a judgment non obstante verdicto in favor of OxyChem
would be entered in the underlying lawsuit tried against them. 

 It should be noted that the complained-of conduct by appellees' employees occurred
before this time frame, earlier in the summer. No appeal was taken from this order. The
only appeal was taken by appellants was to the conversation from an opt out class to a
mandatory class. That order was signed and entered June 30, 1995. (7)

 Finally, on May 5, 1997, the trial court entered an order entitled: "Final Order
Concerning Class Members Who Have Been Paid." According to appellees, this included
the "Gonzalez Plaintiffs," whom we have refereed to as "dissidents," a few of whom are
appellants here. This final order states: "The obligations of the Class Representatives and
Class Counsel to those Class Members identified in Exhibit "I", by reason of the creation and
certification of this class action, have been satisfied and discharged." This judgment was
likewise not appealed. Based upon both the 1995 Order of Dismissal and the 1997 final
judgment, we must assume that the trial court exercised its role as guardian of the class not
only in approving class settlements, but also in deciding whether to certify a class in the first
place. See Bloyed, 916 S.W.2d at 954-55. This means that the trial court exercised its
authority to assure that rule 42's certification requirements that class claims are common and
typical of the entire class, and that the class representatives and their counsel were
adequate representatives. See id.; see also Browning, 698 S.W.2d at 363. 

 Appellees also argue that collateral estoppel and res judicata bar appellants' current
attempts to hold appellees responsible for alleged breeches of duty to the class. These are
affirmative defenses upon which appellees have the burden of proof. Therefore, a "no
evidence" motion for summary judgment is inappropriate. See Tex. R. Civ. P. 166a(i) . 
Further, these matters were not raised with the trial court and therefore cannot be grounds
for affirmance here.

 In sum, the record shows judgments and final orders affirmatively finding that
appellees satisfied and discharged their duties of representation as class counsel. In
addition, hundreds of affidavits from the dissidents delineate extensive briefing of their rights
by counsel. Appellants do not point to a single affidavit or other proof that any dissident-appellant was in fact impacted or was the victim of a breach of fiduciary duty. Neither the
findings of the trial court nor the affidavits by many of the dissidents themselves were
attacked so as to raise a fact issue. We conclude that the record is devoid of any evidence
that appellees breached such duties. See Ford Motor Co., 135 S.W.3d at 600. 

 Fee forfeiture or disgorgement is appropriate only where there is a breach of duty, a
clear and serious violation of a duty to a client, that destroys or severely impairs the
client-lawyer relationship. Bilodeau v. Webb, 170 S.W.3d 904, 915-16 (Tex. App.-Corpus
Christi, 2005, pet denied) (citing Burrow 997 S.W.2d at 238). The record before us does
not provide any evidence to support such a conclusion. Appellants' issue two is overruled.

 III. Denial of Motion for New Trial

 In their last issue, appellants complain of the denial of their motion for new trial. The
motion itself almost exclusively addressed the appointment of Judge Pate. Appellants do
not set out any other matters not already addressed above. A trial court's denial of a motion
for new trial is reviewed for abuse of discretion. See Pharo v. Chambers County, 922
S.W.2d 945, 947 (Tex. 1996). Because we have already addressed each of appellants'
complaints that they reiterate in this issue and found no error, appellants' issue four is
overruled. 

 The judgment of the trial court is affirmed. 



 DON WITTIG,

 Justice





Memorandum opinion delivered and 

filed this the 22nd day of May, 2008.


1. Retired Fourteenth Court of Appeals Justice Don Wittig assigned to this Court by Chief Justice of the
Supreme Court of Texas pursuant to the government code. Tex. Gov't code ann. § 74.003 (Vernon 2005). 

2. The class settlement ranged from $500 to $5,500 each depending on whether or not, and when,
the claimant received medical attention.
3. Appellants somehow contend that they were ipso facto entitled to $14,500 additional damages, the

amount received by another part of the dissident group. They ignore the fact that over 8,000 plaintiffs received
$5,500 or less in settlements. Of those plaintiffs who actually went to the jury, seven recovered no damages,
and five were found to have sustained total damages of $3,400 between the five plaintiffs. Thus, the average
recovery per plaintiff in the underlying trial was $283.33. Had 80% of the dissidents not dropped their appeal,
then there would have been no class settlement. Then neither dissidents nor non-dissident class members 
would have received any settlement from OxyChem. In that scenario, appellants' damage argument would
require a conclusion that appellants were entitled to zero damages. This illustrates the speculative nature of
appellants' argument. Furthermore, this speculative argument is not supported by any expert or even lay
testimony. We also note that appellants largely rely upon argument rather than actual summary judgment
proof.
4. This statement was factually and legally accurate as we understand the status of the class action
settlement.
5. By analogy, appellants would argue that a patient could single out an isolated visit to her physician,
one of many visits where a medical condition was discussed, and claim that the physician failed to fully apprise
the patient of her condition at that visit, ignoring multiple other discussions covering the same subject matter. 
Perhaps even a better analogy to this case would be a patient who sees and discusses her symptoms with
her doctor. Later, she has a conversation with a nurse, only to complain the nurse did not fully apprise the
patient of her treatment options.
6. Many of appellants' citations to the clerk's record are erroneous. Appellants also cited both the trial
court and this Court to multiple and entire depositions. See Tex. R. App. P. 38.1(f).
7. This appeal was dismissed. See De Los Santos v. Occidental Chem. Corp., 953 S.W.2d 807, 808
(Tex. App.-Corpus Christi, 1997, no pet.).