Lewis WAGNER, Petitioner,

v.

CAPROCK BEEF PACKERS COMPANY, Respondent.

No. B–5781.

Supreme Court of Texas.

July 21, 1976.

Rehearing Denied Sept. 29, 1976.

**304**

Lemon, Close, Atkinson & Shearer, Otis C. Shearer, Booker, for petitioner.

Gibson, Ochsner, Adkins, Harlan & Hankins, A. B. Hankins, Amarillo, for respondent.

STEAKLEY, Justice.

The question before us is whether the record supports a jury finding that the manager of a meat packing plant was acting in the course and scope of his employment when he slandered a former employee. The trial court ruled that it did; the Court of Civil Appeals held that it did not. 531 S.W.2d 194. We agree with the Court of Civil Appeals.

The facts and procedural situation are these. Lewis Wagner, plaintiff below and Petitioner here, is a former employee of Caprock Beef Packers Company, a corporation engaged in the meat packing business. It has a plant located at Booker, Texas. Elmer Rabin was the general manager of the Booker plant. Wagner voluntarily left his employment at the Booker plant and later applied for employment at three other packing plants in no way connected with Caprock Beef Packers, and located elsewhere. Rabin learned of these applications for employment and on his own initiative, and not in response to any inquiries from Wagner's prospective employers, telephoned the personnel manager at each plant and stated that Wagner was an alcoholic.

Wagner sued Caprock Beef Packers and Rabin for slander. Upon trial the jury found that Rabin's remarks were false and that they were made while Rabin was "acting within the course and scope of his employment for Caprock Beef Packers Co."[1] Caprock made a motion to disregard the

jury's finding on course and scope of employment and to render judgment non obstante veredicto in its favor. The trial court overruled Caprock's motion and rendered a joint and several judgment against Caprock Beef Packers and Rabin for actual and exemplary damages in the sum of $35,-000.00. Caprock appealed; Rabin did not appeal and the judgment as to him has become final.

The Court of Civil Appeals reversed the judgment of the trial court and rendered judgment that Wagner take nothing against Caprock. It held there was no evidence in the record to support the finding of the jury that Rabin was acting within the course and scope of his employment when he made the slanderous telephone calls.

Both parties agree that the governing rule is stated in *Texam Oil Corp. v. Poynor,* 436 S.W.2d 129 (Tex.1968):

> "An action is sustainable against a corporation for defamation by its agent, if such defamation is referable to the duty owing by the agent to the corporation, and was made while in the discharge of that duty. Neither express authorization nor subsequent ratification is necessary to establish liability."

In response to Wagner's requests for admissions, Caprock admitted that Rabin's duties "included the hiring, firing and directing the work of Caprock's employees at the Booker, Texas, facility." A witness testified that Rabin "ran" the plant at Booker and that he did not let anyone else have any authority at the plant. Other than this, the record is silent with respect to the scope of the duties of Rabin, and as to the custom and practice in the meat packing business pertaining to the duties of the general manager of a meat packing plant. There is no evidence that Caprock charged Rabin with the duty of voluntarily assisting other meat packing plant employers in the hiring of employees generally, or in the hiring of any former employees of Caprock; nor is there

---

1. In connection with this issue, the trial court instructed the jury that the phrase "course and scope of his employment" meant "conduct that is referable to the duty owing by an employee to the corporation and made while in the discharge of that duty."

any evidence of any custom or practice of such unsolicited assistance on the part of one meat packing plant to another such plant, or of any benefit to Caprock in thus prejudicing the opportunity of Wagner for employment elsewhere.

Notwithstanding, Wagner argues that the showing that Rabin was in charge of Caprock's plant, and that his duties included the hiring and firing of personnel, support an inference the jury was entitled to draw that Rabin's unsolicited communication defaming Wagner was referable to and in discharge of a duty Rabin owed Caprock; and, further, that in any event, such showing, standing alone, established that Rabin was a vice-principal for whose defamatory acts Caprock was responsible. We disagree. Whether or not other plants employed Wagner was not shown by the record to involve, or have any relation to, the personnel activities or decisions of Rabin as manager of Caprock's Booker plant. Nor was there any evidence that the personnel policies of Caprock, or the quality of its products, or the operation of its plant, would be affected in any wise by the employment decisions of other plants having no connection with Caprock's Booker plant. Moreover, Wagner had voluntarily left his employment with Caprock and there is no evidence that Caprock had any further interest in where he went or for whom he worked; or that Caprock owed any duty to furnish information concerning Wagner to third persons. This no doubt explains the testimony of Rabin when called as an adverse witness by Wagner, and who was interrogated on direct examination concerning his telephone calls to Wagner's prospective employers:

Q. Isn't it true that you don't make it a practice of calling up other Packing Companies about employees? That is not your practice?

A. That's right.

Q. And if anyone would ever do that, that would be rather unusual in the Packing Industry, would it not?

A. Yes.

We have reviewed the evidence, and all permissible inferences therefrom, in the light most favorable to Wagner, see *Biggers v. Continental Bus System,* 157 Tex. 351, 303 S.W.2d 359 (1957). In so doing, we hold there is no factual basis for the inference that Rabin's unsolicited calls were referable to or in discharge of any duty he owed Caprock, or that Caprock had conferred on Rabin such comprehensive and general power as to make Rabin its alter ego whose acts were the acts of the corporation. See *Great Atlantic & Pacific Tea Co. v. Majure,* 176 Miss. 356, 167 So. 637 (1936), where under an analogous review of the evidence, the court concluded that the manager of a local store of the corporate employer was not about his employer's business when he uttered the slanderous words imputed to him. And cf. *Producers' Refining Co. v. Frazier,* 283 S.W. 880 (Tex.Civ. App.1926, no writ) where the evidence established that an auditor for the corporate employer was engaged in the work committed to him when he uttered the slanderous words; as the court there said, the slander was referable to the manner in which the auditor performed an authorized duty. See also *Fort Worth Elevators Co. v. Russell,* 123 Tex. 128, 70 S.W.2d 397 (1934) and *Raney v. H. B. Zachry Co.,* 285 S.W.2d 955 (Tex.Civ.App.1956, no writ). It can only be concluded under the evidence here that Rabin was acting independently and outside the scope of any duty he owed Caprock.

The judgment of the Court of Civil Appeals is affirmed.

Dissenting opinion by McGEE, J., joined by SAM D. JOHNSON, J.

McGEE, Justice (dissenting).

I respectfully dissent.

Upon reviewing the case now before us we must determine whether there is any evidence to support the jury's finding that Elmer Rabin's slanderous remarks were made while Rabin was acting within the course and scope of his employment for Caprock Beef Packers Company. Under a "no evidence" assignment of error we may consider only that evidence, if any, which,

when viewed in its most favorable light, supports the finding, and we must disregard all evidence and inferences which would lead to a contrary result. *Garza v. Alviar,* 395 S.W.2d 821 (Tex.1965). In sustaining Caprock's no evidence point, the majority has held that "there is no factual basis for the inference that Rabin's unsolicited calls were referable to or in discharge of any duty he owed Caprock . . . ." The majority announces that it can only be concluded under the evidence here that Rabin was acting independently and outside of any duty he owed Caprock in his unsolicited slander of Wagner. I would not concede that this is the only conclusion that can be reached.

In the instant case, both the majority of this court and the court of civil appeals have erroneously relied upon Rabin's testimony, when called as an adverse witness by Wagner, as being supportive of their holding. Rabin testified that he did not make a practice of contacting other packing companies about employees and that such a procedure would be unusual in the meat packing industry. This testimony, which must not be considered by us, is the only evidence in the record which would indicate that Rabin did not make these calls within the course of his employment. In *Cartwright v. Canode,* 106 Tex. 502, 171 S.W. 696, 698 (1914), this court stated that in passing upon the question of whether there was any evidence to sustain a verdict for the plaintiff, *the Supreme Court must reject all evidence favorable to the defendants,* and consider only that evidence sustaining the verdict. In *Cartwright,* when considering whether there was any evidence to support a jury finding favorable to the plaintiff the court also held that "[t]his court must pass upon that issue as if the evidence favorable to the defendants had not been before the jury." By considering Rabin's testimony which is adverse to Wagner's position, the majority has assumed the role of a fact finder and has improperly weighed the evidence on both sides of the issue. Obviously, by taking cognizance of Rabin's testimony, the majority in the instant case has not properly followed the applicable "no evi-

dence" appellate review standard in reaching its final determination.

However, I am in agreement that the rule governing this case is that set out in *Texam Oil Corporation v. Poynor,* 436 S.W.2d 129, 130 (Tex.1968):

> "An action is sustainable against a corporation for defamation by its agent, if such defamation is referable to the duty owing by the agent to the corporation, and was made while in the discharge of that duty."

On the other hand, I disagree with the majority's application of this broad rule to the factual situation presently before us. Is there any evidence in this record that will support the jury's finding that Rabin's defamatory remarks were made within the course and scope of his employment? I believe that there is. It is undisputed that Rabin was the general manager or executive officer of Caprock's plant in Booker, and that he also served as its treasurer. We have frequently spoken of the broad powers possessed by a general manager. In *Sealy Oil Mill & Mfg. Co. v. Bishop Mfg. Co.,* 235 S.W. 850 at 852 (Tex.Comm'n App. 1921, opinion adopted), the Court stated that:

> "The general manager of a corporation occupies the position of a general agent. As a corporation can only act through its agents, the general manager, or general agent, is virtually the corporation itself."

Thus, the general manager is often an extremely powerful individual clothed with substantial authority. *See, Helms v. Home Owners' Loan Corporation,* 129 Tex. 121, 103 S.W.2d 128 (1937). By virtue of his position, Rabin was empowered and obligated to hire and fire employees on behalf of Caprock and he alone controlled matters involving personnel. Mr. Abel testified that "Mr. Rabin didn't let anyone else have any authority at the Packing House," and that Mr. Rabin alone ran the plant. Further, Rabin made not one, but three telephone calls to the personnel managers at the various plants where Wagner was seeking employment falsely informing them that Wagner was an alcoholic. These calls

were made only a few weeks after Wagner had voluntarily terminated his position with Caprock. Additionally, it is clear that Rabin made all three of these calls on company time, on a work day, and from his own office at the Booker plant. Finally, Rabin personally *knew,* and requested to speak with, each of the personnel managers at the three meat packing plants he contacted. It is inconceivable that a corporation could operate a packing plant which obviously would require that employees be hired and fired and not have a supervisor or manager with authority to give and receive personnel references.

It is evident to me that the jury was at liberty to conclude that the telephone calls in question were referable to the manner in which Rabin performed his authorized duty as Caprock's personnel manager, and that they were not referable to acts *wholly independent* and outside of the scope of such duty. The jury was entitled to infer that the slanderous statements were uttered within the scope of Rabin's broad authority as general manager of Caprock's principal place of business. I would not hold that there is no evidence to support the jury's findings partly due to the fact that the record is silent as to the custom and practices of general managers in the meat packing industry as a whole. The jury should be allowed to decide this case on its merits and base its findings upon the particular authority granted to Rabin alone, regardless of the practice adopted by other general managers in the meat packing business.

In *Woods v. Townsend,* 144 Tex. 594, 192 S.W.2d 884 (1946), this court stated that if reasonable minds cannot differ from the conclusion that the evidence lacks probative force, it will be held to be the legal equivalent of no evidence. I fail to understand how one can assert that in the instant case, reasonable minds could not differ as to whether or not the evidence reflected in this record lacks probative force. The majority has held that the evidence offered in this case to prove that Elmer Rabin made these slanderous statements while in the course and scope of his employment is so weak as to do no more than create a mere surmise or suspicion. Under this record, I have difficulty understanding how the majority reached the conclusion that "there is *no factual basis* for the inference that Rabin's unsolicited calls were referable to or in discharge of any duty he owed Caprock." [Emphasis added].

In his excellent article discussing "no evidence points of error," Justice Calvert stated that "[i]f the inference is not a reasonable one a 'no evidence' point should be sustained." Calvert, *"No Evidence" and "Insufficient Evidence" Points of Error,* 38 Texas L.Rev. 361, 363 (1960). *See also, Western Telephone Corporation of Texas v. McCann,* 128 Tex. 582, 99 S.W.2d 895 (1937); *Texas & N. O. R. Co. v. Warden,* 125 Tex. 193, 78 S.W.2d 164 (1935). Certainly the inference drawn by the jury is a reasonable one. I would uphold the findings of the jury. Accordingly, I would reverse the judgment of the court of civil appeals and affirm the judgment of the trial court.

SAM D. JOHNSON, J., joins in this dissent.