**Affirmed and Memorandum Opinion filed March 26, 2019.**



**In the**

# Fourteenth Court of Appeals

### NO. 14-17-00754-CV

**DAWN BROWN, Appellant**

**v.**

**ASHLEY ROBINSON, Appellee**

**On Appeal from the 506th Judicial District Court
Waller County, Texas
Trial Court Cause No. 16-12-24047**

## M E M O R A N D U M   O P I N I O N

This is a case about election of remedies under chapter 106 of the Texas Tort Claims Act. Dawn Brown appeals from the trial court's grant of a plea to the jurisdiction filed by Prairie View A&M University (PVAMU) and appellee Ashley Robinson.[1] In her single issue presented, Brown argues that the trial court erred by granting the plea "because Coach Brown properly sued Robinson [, a government

---

[1] By the time the trial court granted the plea to the jurisdiction, Brown had filed an amended petition that abandoned her claims against PVAMU.

employee,] and not PVAMU [, a governmental entity,] on her tort claims, and because Robinson's tortious actions were committed outside the scope of his employment." In her appellate brief, Brown also alleges that the trial court erred in disallowing her to conduct more discovery on her tort claims against Robinson. We affirm, concluding that Robinson's alleged tortious actions were taken within the scope of his employment and that Brown failed to preserve her discovery-request complaint for appellate review.

## I. BACKGROUND

Brown was the head coach of the women's basketball team at PVAMU. In December 2015, PVAMU's Title IX Coordinator Alexia Taylor was informed that Brown had removed two female student-athletes from the team because they were dating each other. Taylor investigated and concluded that Brown had violated Title IX[2] by implementing and enforcing a team rule against team players dating. PVAMU fired Brown for cause.

Brown filed a lawsuit against PVAMU and Robinson, PVAMU's athletic director, asserting claims for breach of contract, defamation, and tortious interference. The style of the lawsuit listed Robinson as a defendant in his individual and official capacities. Brown alleged that Robinson made defamatory comments "that Coach Brown acted inappropriately in a variety of other ways that were unrelated to the Title IX claim." Brown alleged these comments were made to then University of Houston Assistant Women's Basketball Coach Ravon Justice and PVAMU Assistant Coach Erica Henry.

PVAMU and Robinson filed a plea to the jurisdiction, asking the court to

---

[2] Title IX prohibits discrimination based on sex. *See* 20 U.S.C. § 1681(a). Same-sex sexual harassment is also actionable under Title IX. *See Doe ex. rel. Doe v. Dallas Indep. Sch. Dist.*, 153 F.3d 211, 219 (5th Cir. 1998).

dismiss Brown's claims with prejudice as barred by governmental immunity and the election-of-remedies rule. With respect to election of remedies, PVAMU and Robinson argued that sections 101.106(e) and 101.106(f) of the Texas Tort Claims Act required dismissal of Brown's claims against Robinson. Tex. Civ. Prac. & Rem. Code Ann. § 101.106(e), (f). PVAMU and Robinson argued that because section 101.106(e) requires dismissal of a government employee when a plaintiff sues both the governmental unit and the employee, the claims against Robinson should be dismissed because (1) suing an employee in the employee's official capacity is effectively suing the governmental unit and (2) Brown had sued Robinson in both his official and individual capacities. PVAMU and Robinson also argued that because section 101.106(f) requires dismissal of the claims against an employee when the employee is sued for conduct within the scope of the employee's employment, Brown's claims against Robinson should be dismissed because Robinson's alleged actions were within the scope of his employment.

In support of the plea, PVAMU and Robinson attached an affidavit executed by Robinson. In the affidavit, Robinson explained that he hired Justice after terminating Brown and that all his conversations with Justice were pursuant to his role as athletic director:

> Speaking to Justice in the process of hiring her as a PVAMU employee and then later supervising her are within the scope of my employment at PVAMU. I did not fraternize[] with Justice privately outside of work, and all conversations with her have been within the context of our mutual employment at PVAMU.

Robinson also stated in his affidavit that his conversations with Henry regarding Brown were within the scope of his employment:

> All of my conversations with Henry were done in my role as Athletic Director supervising her, and supervising her was within the scope of my employment at PVAMU. . . . I did not fraternize[] with Henry

3

privately outside of work, and all conversations with her have been within the context of our mutual employment at PVAMU.

In response to the plea, Brown asserted that her defamation claim was brought solely against Robinson in his individual capacity. Brown argued that Robinson's alleged defamatory statements were made outside the scope of employment, and therefore "Robinson alone is the proper defendant" to the defamation claim and the claim against Robinson was not subject to dismissal. Brown did not address her claim for tortious interference. Attached to the response, Brown included her own affidavit that described the alleged defamatory comments. Brown described Robinson's alleged comments to Justice as comments about Brown's performance as a coach and her treatment of the players:

> The comments from Athletic Director Robinson were about my "professionalism" as a coach and my behavior and interaction with the players. He made statements about me mistreating the players on my team. He made statements about me verbally abusing my players. He generally made statements that were negative toward me as a professional and coach.

Brown similarly described Robinson's alleged comments to Henry:

> Coach Henry stated that she had a conversation with Athletic Director Robinson about my "professionalism" as a coach and my behavior and interaction with the players. He told her that he had several complaints about me mistreating the players on my team. He said that I would verbally abuse the players and purposefully bullied them. He said they were "scared" to report specific altercations but knew that because he fired me those incidents would be reported. He used the term "wilding out," which means a person is "out of control." He told her that I did not listen to authorities and I did not respect his administration.

Brown also included the affidavit of Arthur Brooks, the grandfather of a team recruit. In his affidavit, Brooks explained that he, his granddaughter, and others met with Robinson "to discuss [his grandaughter's] desire to be released

4

from her commitment to Prairie View." The granddaughter wanted out of her commitment to the team because of Brown's termination. In his affidavit, Brooks also stated that, in the meeting, Robinson commented on Brown's treatment of the players:

> During the meeting, we discussed the allegations made against Coach Brown relating to her team rule and Title IX. I informed Mr. Robinson that I did not have any issues with the team rule. Thereafter, Mr. Robinson told me that Coach Brown was terminated for "much more" than the team rule. He stated that other players had complained about Coach Brown. He stated that Coach Brown was verbally abusive to the players. He told me that I did not know Coach Brown like he knew Coach Brown. He told me that Coach Brown was not fair to the players.

Brown subsequently amended her petition. The style of the amended petition included only Robinson in his individual capacity, not his official capacity. The amended petition also added allegations regarding Robinson's alleged comments to Brooks.

The next day, Brown filed a second amended petition and an amended response to the plea to the jurisdiction. The second amended petition did not include PVAMU as a defendant and did not include Brown's breach-of-contract claim. In her amended response to the plea, Brown asserted that her defamation claim *and her tortious interference claim* were brought solely against Robinson in his individual capacity and reiterated her argument that Robinson's comments were made outside the scope of his employment.

Brown later filed a "Motion for Nonsuit Without Prejudice" and asked that the trial court "nonsuit only her breach of contract claims against Ashley Robinson, in his Official Capacity[3] and Prairie View A&M" without prejudice.[4] The trial

---

[3] Brown asserted she had filed suit against Robinson in his official capacity only with

5

court initially granted Brown's Motion for Nonsuit Without Prejudice. The trial court later amended its order, this time "nonsuiting"[5] only the breach-of-contract claim against PVAMU. Thereafter, the trial court granted the plea to the jurisdiction and dismissed Brown's remaining claims with prejudice.

## II. ANALYSIS

In her single issue, Brown argues the trial court erred in granting the plea to the jurisdiction because Brown "solely asserted the tort claims against Robinson" individually and "Robinson's tortious statements were not made in the performance of his duties for PVAMU."

## A. Standard of review

"A plea to the jurisdiction is a dilatory plea that seeks dismissal of a case for lack of subject matter jurisdiction." *Harris Cty. v. Sykes*, 136 S.W.3d 635, 638 (Tex. 2004). A plea to the jurisdiction may be used to challenge the sufficiency of jurisdictional allegations in the pleadings or to controvert jurisdictional facts alleged, or both. *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226–27 (Tex. 2004). We review a trial court's ruling on a plea to the jurisdiction de novo. *Id.* at 226.

When a plea to the jurisdiction challenges the facts pleaded in a petition, the courts must construe the pleadings liberally in favor of the plaintiff. *Id.* at 226. If the pleadings do not contain sufficient facts to affirmatively show the trial court's

---

respect to her breach-of-contract claim.

[4] The claims Brown purported to "nonsuit" were no longer pending as Brown had previously withdrawn them by filing an amended pleading. Brown's "nonsuit" was also improper because it sought to voluntarily dismiss the case as to only a portion of her (then withdrawn) claims. A true nonsuit under Texas Rule of Civil Procedure 162 voluntarily dismisses the entire case. *C/S Solutions, Inc. v. Energy Maint. Servs. Group LLC*, 274 S.W.3d 299, 305–07 (Tex. App.—Houston [1st Dist.] 2008, no pet.).

[5] *See supra* note 4.

jurisdiction—that is, if there is a gap in jurisdictional facts or a complete absence of them—the trial court must allow the plaintiff an opportunity to amend its pleadings. *Id.* at 226–27. If the pleadings affirmatively negate the existence of jurisdiction, the trial court may grant the plea to the jurisdiction without allowing the plaintiff an opportunity to amend. *Id.* at 227.

When a plea to the jurisdiction challenges the existence of jurisdictional facts, courts must consider relevant evidence submitted by the parties. *Id.* If the evidence creates a fact issue regarding jurisdiction, the trial court does not rule but, instead, submits the issue to the fact finder in a trial on the merits. *Id.* at 227–28. Otherwise, the trial court rules on the motion as a matter of law. *Id.* at 228.

The standard for reviewing a trial court's ruling on a jurisdictional plea based on evidence generally mirrors the standard for reviewing a traditional summary judgment. *Id.* Under this standard, we credit as true all evidence favoring the nonmovant and draw all reasonable inferences in the nonmovant's favor. *Id.* The movant must assert the absence of subject-matter jurisdiction and present conclusive proof that the trial court lacks subject-matter jurisdiction. *See id.* If the movant discharges this burden, the nonmovant must present evidence sufficient to raise a genuine issue of material fact regarding jurisdiction, or the trial court must sustain the plea. *Id.*

**B.     Texas Tort Claims Act and election of remedies**

The Texas Tort Claims Act provides a limited waiver of immunity from suit and liability for certain tort claims against a governmental unit. Tex. Civ. Prac. & Rem. Code Ann. §§ 101.001–101.109. The Act includes a comprehensive election-of-remedies provision in section 101.106. *Id.* § 101.106; *see Mission Consol. Sch. Dist. v. Garcia*, 253 S.W.3d 653, 656 (Tex. 2008) ("After the [Act] was enacted, plaintiffs often sought to avoid the Act's damages cap or other strictures by suing

7

governmental employees . . . . To prevent such circumvention, and to protect governmental employees, the Legislature created an election-of-remedies provision."). Under the election-of-remedies provision, plaintiffs must pursue either the governmental unit or the employee individually, not both. *Univ. of Tex. Health Sci. Ctr. at Houston v. Rios*, 542 S.W.3d 530, 536–37 (Tex. 2017). Plaintiffs may not plead alternatively that the governmental unit is liable for the actions of its employee but, if not, the employee acted independently and is individually liable. *See id*. Section 101.106 specifically provides:

> (a) The filing of a suit under this chapter against a governmental unit constitutes an irrevocable election by the plaintiff and immediately and forever bars any suit or recovery by the plaintiff against any individual employee of the governmental unit regarding the same subject matter.

> (b) The filing of a suit against any employee of a governmental unit constitutes an irrevocable election by the plaintiff and immediately and forever bars any suit or recovery by the plaintiff against the governmental unit regarding the same subject matter unless the governmental unit consents.

> . . . .

> (e) If a suit is filed under this chapter against both a governmental unit and any of its employees, the employees shall immediately be dismissed on the filing of a motion by the governmental unit.

> (f) If a suit is filed against an employee of a governmental unit based on conduct within the general scope of that employee's employment and if it could have been brought under this chapter against the governmental unit, the suit is considered to be against the employee in the employee's official capacity only. On the employee's motion, the suit against the employee shall be dismissed unless the plaintiff files amended pleadings dismissing the employee and naming the governmental unit as defendant on or before the 30th day after the date the motion is filed.

Tex. Civ. Prac. & Rem. Code Ann. § 101.106.

Section 101.106 requires a plaintiff to decide his or her theory of tort

8

liability before filing suit. *See Garcia*, 253 S.W.3d at 657 ("[A] plaintiff [must] decide at the outset whether an employee acted independently and is thus solely liable, or acted within the general scope of his or her employment such that the governmental unit is vicariously liable."). The decision is "an irrevocable election *at the time suit is filed*." *Id.* (emphasis added). Consequently, an amendment to plaintiff's petition or a nonsuit following such a motion to dismiss "does not operate to deny the movant a ruling on its motion." *Rios*, 542 S.W.3d at 537. When interpreting section 101.106, courts "must favor a construction that most clearly leads to the early dismissal of a suit against an employee when the suit arises from an employee's conduct that was within the scope of employment." *Id.* (quoting *Tex. Adjutant Gen.'s Office v. Ngakoue*, 408 S.W.3d 350, 355 (Tex. 2013)).

Brown argues that section 101.106(e) does not apply to her claims because she sued "Robinson alone for defamation and tortious interference" and section 101.106(f) does not apply to her claims because Robinson was not acting within the scope of his employment.[6] We need not decide whether section 101.106(e) applies because we conclude that section 101.106(f) applies and independently supports the trial court's grant of the plea.[7] Robinson was entitled to dismissal as a matter of law because the facts conclusively establish that Brown's tort claims against Robinson arose from conduct within the general scope of his employment.

---

[6] Brown does not dispute that Robinson is a government employee or that Brown's tort claims could have been brought against PVAMU based on the waiver of immunity in the Tort Claims Act. The only issue is whether Robinson acted within the scope of his employment when he made the allegedly defamatory statements.

[7] When, as in this case, the order granting a plea to the jurisdiction does not specify the grounds on which the trial court relied, we must affirm if any of the independent grounds have merit. *Shannon v. Mem'l Drive Presbyterian Church U.S.*, 476 S.W.3d 612, 621 (Tex. App.—Houston [14th Dist.] 2015, pet. denied) (citing *State v. $90,235*, 390 S.W.3d 289, 292 (Tex. 2013), and *Sw. Bell Tel., L.P. v. Harris Cty.*, 267 S.W.3d 490, 494 (Tex. App.—Houston [14th Dist.] 2008, no pet.)).

In *Laverie v. Wetherbe*, the Texas Supreme Court explained the scope-of-employment analysis in the context of the Act's election-of-remedies provision. 517 S.W.3d 748 (Tex. 2017). In that case, a professor sued a colleague for defamation after he was passed over for a promotion to dean. *Id.* at 750. The professor alleged that the defendant—who was in charge of recruiting and hiring at the college and was a member of the dean search committee—told the university provost that the faculty considered the professor to be a "singular" candidate for the dean position, which the provost understood to mean that the faculty viewed the professor as the "presumptive front-runner" for the position. *Id.* at 750–51. The professor also alleged that the defendant told the provost that a staff member reported the professor was using "some kind of a listening device" to "eavesdrop on people's conversations" at the college. *Id.* at 751. The trial court denied the defendant's summary-judgment motion in which she argued that she was entitled to dismissal under section 101.106(f) because she acted in the scope of her employment when making the allegedly defamatory statements. *Id.* The court of appeals affirmed, noting that the record did not "conclusively establish" that the defendant "was serving any purpose of her employer, as opposed to furthering her own purposes only" when she spoke with the provost about the plaintiff. *Id.*

The Texas Supreme Court disagreed, holding that the subjective intent of an employee is not relevant to the scope-of-employment analysis. *Id.* at 756. The court clarified that for purposes of the Act, the analysis is like the analysis undertaken to determine whether an employer is liable for the acts of an employee under a respondeat superior theory. *Id.* at 752–53; *see Goodyear Tire & Rubber Co. v. Mayes*, 236 S.W.3d 754, 757 (Tex. 2007) ("The employee's acts must be of the same general nature as the conduct authorized or incidental to the conduct authorized to be within the scope of employment."). The court explained that the

10

analysis "calls for an objective assessment of whether the employee was doing her job when she committed an alleged tort, not her state of mind when she was doing it." *Laverie*, 517 S.W.3d at 753. The relevant question is whether there is a "connection between the employee's job duties and the alleged tortious conduct," and "[t]he answer may be yes even if the employee performs negligently or is motivated by ulterior motives or personal animus so long as the conduct itself was pursuant to her job responsibilities." *Id.* In other words, "[t]he fundamental inquiry . . . is not whether [the employee] did her job well or poorly, or whether she did her job selfishly or altruistically, but simply whether she was doing her job." *Id.* at 755.

The *Laverie* court concluded that the defendant was objectively acting in the course and scope of her employment when she spoke to the provost about the professor; therefore, she was entitled to dismissal under section 101.106(f). *Id.* at 756. The court reasoned that, according to the provost's testimony, it was within the defendant's role to "bring personnel complaints," such as the complaint about the professor's alleged eavesdropping, to his attention. *Id.* at 755. Additionally, the court observed that the defendant "did not volunteer that the faculty perceived [the professor] to have the inside track [on the dean position]. Rather, she offered that information in direct response to an unsolicited question by the provost." *Id.* For these reasons, even if the defendant defamed the plaintiff, "she did so while fulfilling her job duties." *Id.* at 755–56.

The Texas Supreme Court more recently applied the scope-of-employment analysis in the context of the election-of-remedies provision in *University of Texas Health Science Center at Houston v. Rios*, 542 S.W.3d 530 (Tex. 2017). In *Rios*, a medical resident sued faculty physicians at a health science center after he was informed he would not be reappointed to the center's residency program. *Id.* at

11

532. The resident alleged that the defendants made false statements about him, including to the Texas Medical Board, in retaliation for his having raised concerns regarding patient welfare. *Id.* at 532, 535–36. The faculty physicians moved for dismissal of the tort claims against them under section 101.106(e). *Id.* at 532–33. The resident responded that the physicians had not acted within the scope of their employment "but as individuals pursuing their own self-interests." *Id.* at 533. The trial court denied the motion to dismiss. *Id.* The court of appeals divided, with the plurality affirming the trial court's decision. *Id.* at 533–34. Again, the Texas Supreme Court disagreed, holding that its decision in *Laverie* defeated the resident's argument that the faculty physicians acted outside the scope of their employment. *Id.* at 534.

Without discussing the specific statements made or the specific job duties of the faculty physicians, the *Rios* court concluded that that the statements allegedly made by the physicians "arose from their employment as faculty members . . . in connection with the operation of the residency program." *Id.* at 536. The court emphasized that government employees are not required to prove their subjective intent behind allegedly tortious acts to establish they acted in the scope of their employment. *Id.* at 535 (quoting *Laverie*, 517 S.W.3d at 756). The court further concluded, "The connection between [the physicians'] job duties and allegedly tortious conduct, as claimed by [the resident] himself, places the statements squarely within the scope of their employment." *Id.* at 536.

In support of her contention that Robinson's comments were outside the scope of his employment, Brown asserts that Robinson made comments to Justice that Brown "acted inappropriately in a variety of ways that were unrelated to Title IX." Brown also argues that because she was a no longer employed with PVAMU, it was not Robinson's job and not in furtherance of PVAMU's business to

comment on Brown's performance to Justice, Brooks, and Henry. Brown characterizes Robinson's comments as "personal views" and states Robinson had "no responsibility or direction to evaluate the former employee's performance" to "various individuals not employed at PVAMU." Brown also characterizes Robinson's comments as "unauthorized gossip." Brown argues that *Laverie* is distinguishable from her case, because unlike Robinson, the defendant in *Laverie* made alleged defamatory comments while discharging a duty specifically assigned to her—bringing personnel issues to the provost's attention. Brown contends that older Texas Supreme Court cases, *Minyard Food Stores, Inc. v. Goodman*, 80 S.W.3d 573 (Tex. 2002), and *Wagner v. Caprock Beef Packers Co.*, 540 S.W.2d 303 (Tex. 1976), control the disposition of this case.

In *Minyard*, a supermarket employee alleged that the store manager defamed her by falsely stating during a workplace misconduct investigation that he had "kiss[ed] and hugg[ed]" her on several occasions. 80 S.W.3d at 574–75. A jury found that the manager defamed the employee and that he did so within the scope of his employment. *Id.* at 575. The court of appeals affirmed. *Id.* The Texas Supreme Court reversed the judgment against the employer, finding no evidence to support the jury's finding that the manager was acting within the scope of his employment. *Id.* at 579. The court stated that, "in the defamation context, establishing that an employee was acting in the course and scope of his employment . . . requires evidence that the employee's statements were made in furtherance of the employer's business, and for the accomplishment of the objective for which the employee was employed." *Id.* at 578. The court observed that "[t]here is a critical distinction between defaming someone to one's employer and defaming someone for one's employer"—the former action is not for the employer's benefit, whereas the latter actions are for the employer's benefit. *Id.* at

13

579. The court explained that although the employer's policies required employees to participate in workplace misconduct investigations, the policies "d[id] not demonstrate that [the manager]'s defaming [the employee] during the investigation would further [the employer]'s business and accomplish a purpose of [the manager]'s job." *Id.*

In *Wagner*, a manager made unsolicited defamatory calls to an ex-employee's prospective employers. 540 S.W.2d at 304. The ex-employee had voluntarily left his employment at the meat-packing plant where the manager worked, and when the manager learned of the ex-employee's applications to other plants, the manager contacted the personnel manager at each plant to state that the employee was an alcoholic. *Id.* None of the personnel managers had asked for this information or made any inquiries to the manager; the manager reached out "on his own initiative." *Id.* In holding that the manager's calls were not referable to or in discharge of any duty he owed the corporation, the supreme court concluded that there was no evidence that the manager's calling other businesses about the ex-employee was for his employer's benefit or to accomplish an objective of his job. *Id.* at 305. In other words, the manager had no professional reason to be making these calls. *Id.* The court explained there was no evidence that the employee's former plant would be affected by the employment decisions of other plants or that the potential new employment of the employee had any relationship to his former manager's personnel activities or decisions. *Id.* The court emphasized that the employee voluntarily left his employment, and there was no evidence the former plant had any interest in where he went to work or any to duty to provide information about the employee to third parties. *Id.*

While *Minyard* and *Wagner* are binding case law, neither case supports Brown's argument that "there was no connection between Robinson's job duties at

PVAMU" and his alleged communications regarding Brown to third parties. Likewise, neither case supports Brown's argument that "Robinson's comments regarding Coach Brown were not made in furtherance of PVAMU's business." All the evidence in this case suggests that, unlike the defendants' comments in *Minyard* or *Wagner*, Robinson's comments were connected to Robinson's job duties and intended to benefit PVAMU. Although Brown characterizes Robinson's comments as "personal views" and "gossip," there is no evidence that Robinson was circulating personal or private information about Brown, such as information regarding an affair or a personal vice like alcoholism. Brown's affidavit and Brooks' affidavit state that Robinson's comments related to her "professionalism" as a coach and her treatment of team players.

We conclude that this case is more akin to *Laverie* and *Rios* than *Minyard* and *Wagner*. Robinson's knowledge and assessment of Brown's performance as a coach was connected to his job duties as athletic director. Robinson's communication of his knowledge and assessment to Justice, Henry, and Brooks also was connected to his job duties. Brown does not dispute that Robinson was speaking to Justice to hire her after Brown's termination. Nor does Brown dispute that Henry was Robinson's subordinate and Brown's former subordinate. Brooks' own affidavit states that he met with Robinson because his granddaughter wanted to be released from her commitment to PVAMU after Brown's termination, and Robinson's comments were made in the context of that discussion. Unlike the manager in *Wagner* who had no reason to contact prospective employers, Robinson had a professional reason to explain his reasons for terminating Brown to Justice, Henry, and Brooks. Moreover, each of these conversations had the potential to benefit PVAMU—to persuade Justice to join PVAMU, to counsel Henry regarding coaching changes and expectations, and to retain the commitment

of Brooks' granddaughter. Factual disputes regarding whether Robinson negligently or wrongfully performed his job duties are not relevant to the issue of whether a connection exists between Robinson's duties and the tortious conduct alleged. *See Laverie*, 517 S.W.3d at 753.

Brown complains that Robinson's comments to Justice concerned matters outside of Title IX, but nothing limited Robinson to discussing Title IX with Justice. Nor does the fact that Brown was no longer employed by PVAMU make Robinson's comments outside the scope of Robinson's employment. Robinson's affidavit confirms that all his discussions with Justice, Henry, and Brooks took place within the context of his employment at PVAMU. More significantly, the affidavits that Brown submitted to the trial court show a professional connection to Robinson's comments. Considering the evidence in the light most favorable to Brown, we conclude as a matter of law that Robinson's alleged comments were made within the scope of his employment as athletic director for PVAMU.

Because the statements at issue in this appeal constitute conduct within the scope of Robinson's employment and no one disputes Brown's claims could have been brought against PVAMU, Brown's tort claims are considered to be against Robinson in his official capacity only. *See id.* at 756. Accordingly, Robinson is entitled to dismissal of those claims pursuant to the Act's election-of-remedies provision. *See* Tex. Civ. Prac. & Rem. Code Ann. § 101.106(f). We overrule Brown's issue.

## C.    Discovery

At the end of her appellate brief, Brown also contends the trial court erred "by not granting the opportunity for discovery that Plaintiff requested in her Response to Defendant's Plea and in the hearing on Defendant's Plea." Brown's "request" in response to the plea was limited to one sentence: "In the alternative,

the court should postpone ruling on Defendant's Plea because almost no discovery has occurred in this case." At the hearing on the plea, Brown's counsel's comments were similarly brief. Brown's counsel stated there had been no discovery, listed discovery that had not been done, and told the trial court, "This is all stuff that we need to do, Your Honor, before you can even make a decision."

When a party contends she has not had an adequate opportunity for discovery before a ruling, the party must file either an affidavit explaining the need for further discovery or a verified motion for continuance. *See Tenneco, Inc. v. Enterprise Prod., Co.*, 925 S.W.2d 640, 647 (Tex. 1996); *Brown v. HEB Grocery Co.*, No. 14-15-0271-CV, 2017 WL 370132, at *1 (Tex. App.—Houston [14th Dist.] Jan. 24, 2017, no pet.) (mem. op.). The record does not reflect that Brown took either of these steps; thus, she failed to preserve error. *See Tenneco, Inc.*, 925 S.W.2d at 647; *Brown*, 2017 WL 370132, at *1. This court may not reverse the trial court's order based on the trial court's alleged failure to allow an opportunity for discovery. *See Tenneco, Inc.*, 925 S.W.2d at 647; *Brown*, 2017 WL 370132, at *1.

## III.    CONCLUSION

We affirm the trial court's order granting the plea to the jurisdiction and dismissing Brown's claims against Robinson with prejudice.


/s/     Charles A. Spain
          Justice


Panel consists of Chief Justice Frost and Justices Spain and Poissant.

17